STATE OF NORTH CAROLINA, Plaintiff v. ELIJAH BRYANT PATE, Defendant

No. COA07-13

(Filed 4 December 2007)

**1. Criminal Law— instructions—deadlocked jury—no prejudicial error**

There was no prejudicial error from an erroneous instruction to a deadlocked jury where, examining the entire record, there was no probable impact on the guilty verdict. The error was instructing the jury that its inability to agree might result in another jury having to try the issue after a tremendous investment of time and money by the State and the defense. Although the term "deadlock" was not used by the jury, a note from the jury to the judge, and the dialogue and attendant circumstances, indicated that the jury was deadlocked.

**2. Sentencing— exercise of right to jury trial—improper consideration—not supported by record**

The record did not indicate that the trial court improperly considered defendant's exercise of his right to a jury trial in imposing an active sentence for indecent liberties, although defendant argued otherwise.

Appeal by defendant Elijah Bryant Pate from judgment entered on 12 July 2006 by Judge Jerry Braswell in Superior Court, Wayne County. Heard in the Court of Appeals 30 August 2007.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Anita LeVeaux, for the State.*

*Jeffrey Evan Noecker for defendant-appellant.*

STROUD, Judge.

After a jury trial defendant was convicted of indecent liberties with a minor on 12 July 2006 in Superior Court, Wayne County. Supplemental instructions were provided to the jury after the jury indicated they were at a "standstill." Judge Jerry Braswell sentenced defendant to an active sentence within the presumptive range of sentences, between 16 and 20 months. Defendant appeals.

**STATE v. PATE**

[187 N.C. App. 442 (2007)]

## I. Background

On 4 April 2005 defendant was indicted by the Wayne County Grand Jury for: (1) first degree statutory sex offense, (2) indecent liberties with a minor, and (3) a lewd and lascivious act with a minor. On 6 February 2006, a superseding indictment was issued charging defendant with: (1) indecent liberties with a minor on or about 1 January 2001 up to and including 30 June 2002, (2) a lewd and lascivious act with a minor on or about 1 January 2001 up to and including 30 June 2002, (3) first degree statutory sex offense, (4) indecent liberties with a minor on or about 1 August 2001 up to and including 30 June 2002, and (5) a lewd and lascivious act with a minor on or about 1 August 2001 up to and including 30 June 2002.

On 10, 11 and 12 July 2006 a jury trial was held before Judge Jerry Braswell in Superior Court, Wayne County. On 12 July 2006 Judge Braswell dismissed both charges of a lewd and lascivious act with a minor and instructed the jury as to the remaining three charges. At 11:26 a.m. the jury retired to deliberate. At approximately 1:03 p.m. the jury came back to the courtroom and informed the court they had not reached a decision. Judge Braswell gave the jury a lunch break until 2:30 p.m. Later in the day, the jury sent a note to the trial judge. The note is not in the record, but the parties agree the note read, "Your Honor, We seem to be at a standstill. [W]e can agree on two counts but are 10-2 on the third. What do you suggest we do." At 4:08 p.m. the jury returned to the courtroom where the following dialogue took place:

THE COURT: Ms. Myers, I have seen your—the note.

FOREMAN MYERS: Okay.

THE COURT: It appears to the Court that you are making some progress. It would appear to the Court that you've made substantial progress. But that you seem to be at the present time unable to resolve one remaining issue.

FOREMAN MYERS: Yes.

THE COURT: Based on the numerical count that you have, it would appear to the Court that I need to send you back in to do some further discussion. You've been at this for a couple hours or so. Do you believe that if you go back and continue discussing this matter and sifting through the evidence and exchanging idears [sic] that you will be able to come to a unanimous decision?

STATE v. PATE

[187 N.C. App. 442 (2007)]

FOREMAN MYERS: (Foreman looking at her fellow jurors) We could try.

THE COURT: You'll try.

FOREMAN MYERS: I think they're pretty adamant.

THE COURT: Both the State and the Defendant have put a great deal of time and effort into this situation, into this case, and what you're discovering that these—arriving at your decisions sometimes is not easy. But that's the way our jury system works. You're the social conscience of this community and you have to make that decision.

If the remaining issue is not resolved, your question, sort of what can we do or should we do? What's the next step?

Then on that issue it would be what we would characterize or classify as a hung jury.

FOREMAN MYERS: Right.

THE COURT: And then that issue may have to be put—could possibly be retried again and heard by another jury for somebody else to try to resolve it, if you're not able to, which is why we're urging you to go back and continue to work on it, and the Defendant and the State have chosen you to make this decision. I didn't say it was going to be easy, but it's entrusted in you, that responsibility, as so we've been here for a couple days now, and we can stay a little bit longer, but, you know, it would be best if we tried it and go ahead and try to resolve that one remaining issue that we have, because it's not going away. And it's your duty to try, if you can, to reach a unanimous verdict, and then if you can't then let me know that as well, but I'm going to give you another chance to try to see if you can do it.

At no point during the preceding dialogue or thereafter did defendant object to the trial court's statements to the jury.

The jury then left the courtroom and returned at 4:43 p.m. with a unanimous verdict of: (1) guilty of taking indecent liberties with a minor child on or about 1 August 2001 and up to and including 30 June 2002, (2) not guilty of first degree sex offense, and (3) not guilty of taking indecent liberties with a minor child on or about 1 January 2001 and up to and including 30 June 2002. Judge Braswell sentenced defendant within the presumptive range of sentences, 16

to 20 months. Defendant appeals and assigns as error the trial court's supplemental jury instructions and imposition of an active sentence of imprisonment.

## II. Jury Instructions

**[1]** Defendant contends the trial court erred in its "coercive manner [of] informing the deadlocked jury that the parties had put a great deal of time and effort into the case, and if they failed to reach a unanimous verdict another jury could be brought in to decide the issues."

Because defendant failed to object to the jury instructions in this case, this assignment of error must be analyzed under the plain error standard of review. Plain error with respect to jury instructions requires the error be so fundamental that (i) absent the error, the jury probably would have reached a different verdict; or (ii) the error would constitute a miscarriage of justice if not corrected. Further, in deciding whether a defect in the jury instruction constitutes plain error, the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt.

*State v. Wood*, 185 N.C. App. 227, 232, 647 S.E.2d 679, 684 (2007) (internal citations and internal quotations omitted).

The law governing the present case is N.C. Gen. Stat. § 15A-1235. *See* N.C. Gen. Stat. § 15A-1235 (2005). N.C. Gen. Stat. § 15A-1235 provides that

(a) Before the jury retires for deliberation, the judge must give an instruction which informs the jury that in order to return a verdict, all 12 jurors must agree to a verdict of guilty or not guilty.

(b) Before the jury retires for deliberation, the judge may give an instruction which informs the jury that:

(1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(2) Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(3) In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(c) *If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its delibera- tions and may give or repeat the instructions provided in sub- sections (a) and (b). The judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.*

(d) If it appears that there is no reasonable possibility of agree- ment, the judge may declare a mistrial and discharge the jury.

N.C. Gen. Stat. § 15A-1235 (emphasis added).

In the present case the jury did not actually use the word "dead- lock"; however, they did inform the judge that they were at a "stand- still" and the jury foreperson indicated that they were adamant about their positions. Though the legal term "deadlock" was not used by the jury, we believe the note, dialogue, and attendant circumstances indi- cate that the jury was deadlocked.

In *State v. Easterling*, the trial court on its own motion brought the jury in from deliberations and instructed them,

Members of the jury, I realize what a disagreement means, and I presume you understand and realize what a disagreement means. *It means that there will be another week or more of the time of the Court that will have to be consumed in the trial of these actions again.* I do not want to force you or coerce you in any way to reach a verdict, but it is your duty to try to recon- cile your differences and to reach a verdict, if it can be done, without any surrender of anyone's conscientious convictions. *You have heard the evidence in this case, and all of it; and a mis- trial will mean that another jury will have to be selected to hear the case or these cases, and the evidence again.* I recognize that there are reasons sometimes why jurors cannot agree. The Court wants to emphasize that it is your duty to do whatever you can to reason the matter over together as reasonable men, reasonable women, and to reconcile your differences, if such is possible without the surrender of your conscientious convictions, and to reach a verdict. . . .

*State v. Easterling*, 300 N.C. 594, 606, 268 S.E.2d 800, 808 (1980) (emphasis added).

The North Carolina Supreme Court held that the instructions above were in error but did not grant a new trial because the instructions were not prejudicial to the defendant, as "[t]he record provide[d] not the slightest indication that the jury was in fact deadlocked in its deliberations, or in any other way open to pressure by the trial judge to 'force' a verdict, at the time the charge was given." *See id.* at 608-09, 268 S.E.2d at 809. The Court went on to carefully distinguish *Easterling* from the facts in *State v. Lamb* where there had been an "initial jury disagreement preced[ing] the offending instruction." *See id.* at 609, 268 S.E.2d at 809.

In *State v. Lipfird*, the jury returned to the courtroom after indicating that they were unable to reach a verdict. 302 N.C. 391, 391, 276 S.E.2d 161, 161 (1981). The judge then gave the following instruction:

> All right, now, Members of the Jury, anything further? *I pre-sume that you members of the jury realize what a disagreement means. It means, of course, that it will be more time of the Court that will have to be consumed in the trial of this action again.* I don't want to force you or coerce you in any way to reach a verdict, but it is your duty to try to reconcile your differences and reach a verdict if it can be done without the surrender of one's conscientious convictions.

> You've heard the evidence in the case. *A mistrial, of course, will mean that more time and another jury will have to be selected to hear the cases and this evidence again.*

> . . . .

*Id.* (emphasis in original). The North Carolina Supreme Court granted a new trial based upon the erroneous jury instructions because "it was error, in violation of G.S. § 15A-1235 . . . to instruct a *deadlocked* jury that its inability to agree will result in the inconvenience of having to retry the case." *Id.* at 392, 276 S.E.2d at 162 (discussing the holding in *Easterling*, 300 N.C. 594, 268 S.E.2d 800) (emphasis added).

In *State v. Lamb*, upon being informed that the jury "could not reach a decision" the trial court gave instructions substantially similar to the instructions in the present case. *See State v. Lamb*, 44 N.C. App. 251, 252, 261 S.E.2d 130, 130-31 (1979), *disc. rev. denied*, 299 N.C. 739, 267 S.E.2d 667 (1980). The trial court instructed that

Both the State and the defendants have a tremendous amount of time and money invested in this case.

If you don't reach a verdict, it means that it will have to be tried again by another jury in this county and that involves a duplication of all the expense and all the time.

. . . .

*Id.* This Court reversed and remanded the case stating that

[i]t was error under the . . . existing law for the court to charge the jurors that if they did not agree upon a verdict another jury might be called upon to try the case; that the State and defendants had a tremendous amount of time and money invested, and retrial involved a duplication of all the time and expense.

*Id.* at 260, 261 S.E.2d at 135.

Here, just as in *Lipfird*, the trial court "instruct[ed] a deadlocked jury that its inability to agree will result in the inconvenience of having to retry the case" and that if they did not reach a unanimous decision another jury may have to hear the case. *See Lipfird* at 391, 276 S.E.2d at 161. Similarly to *Lamb* the trial court here erroneously informed the jury that "if they did not agree upon a verdict another jury might be called upon to try the case" and "that the State and defendants had a tremendous amount of time and money invested." *See Lamb* at 260, 261 S.E.2d 135. "Although the instruction herein did not mention the expense of retrying the case, it clearly mentioned the potential inconvenience and use of the court's time. In our view . . . this instruction constitute[s] prejudicial error." *State v. Johnson*, 80 N.C. App. 311, 314, 341 S.E.2d 770, 772 (1986). Just as in *Easterling* we find error in the trial court's instructions. *See Easterling* at 608, 268 S.E.2d at 809.

However, the present case is distinguishable from *Easterling* in that the jury was deadlocked at the time supplemental instructions were provided. *See Easterling* at 609, 268 S.E.2d at 809. Though both *Lipfird* and *Lamb* had deadlocked juries neither indicate what standard of review the courts were using or simply refer to "prejudicial error." *See Lipfird*, 302 N.C. 391, 276 S.E.2d 161; *Lamb*, 44 N.C. App. 251, 261 S.E.2d 130. Prejudicial error is "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443 (2005). A "reasonable pos-

sibility" of a different result at trial is a much lower standard than that a different result "probably" would have been reached at trial, which is what this Court must find for there to be plain error. *See id*; *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80 (1986); Wood at 232, 647 S.E.2d at 684.

> The plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where the error is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.
>
> . . . .
>
> [I]n deciding whether a defect in the jury instruction constitutes plain error, the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt.

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *U.S. v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982), *cert. denied*, *McCaskill v. U.S.*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982) (footnotes omitted) (emphasis in original) (internal quotations omitted)).

In *State v. Williams* this Court stated the trial court erred in its jury instructions, but concluded it did not rise to a level of plain error because an "error does not . . . automatically entitle the defendant to a new trial. We have recognized that every variance from the procedures set forth in the statute does not require the granting of a new trial." *State v. Williams*, 315 N.C. 310, 327-28, 338 S.E.2d 75, 86 (1986) (internal citation and internal quotations omitted).

The trial court did erroneously instruct the jury, but we cannot now conclude that the error was so fundamental that "absent the error, the jury *probably* would have reached a different verdict . . . or . . . the error . . . constitute[d] a miscarriage of justice." *Wood* at 232, 647 S.E.2d at 684 (emphasis added). The State presented evidence which included, *inter alia*, eyewitness testimony and the signed con-

fession of defendant, with changes to the confession initialed by defendant. We have examined the entire record and do not conclude the trial court's error in instructions had "a probable impact on the jury's finding of guilt." *Odom* at 660, 300 S.E.2d at 378. This assignment of error is overruled.

### III. Sentencing

[2] Defendant next assigns error to the trial court's imposition of an active sentence based on defendant exercising his right to a jury trial. Defendant attempts to characterize the alleged sentencing error as a constitutional question which this court reviews *de novo*. *Row v. Row*, 185 N.C. App. ——, ——, 650 S.E.2d 1, 4 (2007).

> A sentence within the statutory limit will be presumed regular and valid. However, such a presumption is not conclusive. If the record discloses that the court considered irrelevant and improper matter in determining the severity of the sentence, the presumption of regularity is overcome, and the sentence is in violation of defendant's rights.

*State v. Boone*, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977).

Pursuant to the United State's Constitution a criminal defendant has a right to a jury trial. U.S. Const. amend. VI. Defendant relies on *State v. Peterson*, where this Court remanded a case for a new sentencing hearing after the judge repeatedly commented about defendant's choice to exercise his constitutionally protected right to a jury trial. *State v. Peterson*, 154 N.C. App. 515, 571 S.E.2d 883 (2002).

However, in the present case, the record does not indicate that the trial court improperly considered defendant's exercise of his right to a jury trial in imposing an active sentence. The only words of the trial court that defendant uses to support this proposition is the trial judge saying, "[H]ow is it that you could come into court and try to convince this court . . . ." After a thorough review of the transcript and record we do not consider this language nor any other statement by the trial court as evidence that the court improperly considered defendant's exercise of his right to a jury trial during the sentencing phase. This assignment of error is without merit.

### IV. Conclusion

For the foregoing reasons we conclude that the trial court did not commit plain error in instructing the jury and that the trial court did

not improperly consider defendant's exercise of his right to a jury trial when it imposed an active sentence.

NO ERROR.

Judges ELMORE and STEELMAN concur.