STATE OF NORTH CAROLINA
v.
FLOYD EDWARD MAY, SR.

No. COA13-37

Filed 5 November 2013

1. **Jury—deadlocked—instruction**

   The trial court's third charge to a deadlocked jury in a prosecution for first-degree statutory rape violated N.C.G.S. § 15A-1235 in several respects, including a reference to the time and expense of the trial and a reference to only a portion of the four-part instruction contained in the statute.

2. **Jury—deadlocked—instruction—standard of review**

   Errors in the third charge to a deadlocked jury in a prosecution for first-degree statutory rape were reviewed for harmless error beyond a reasonable doubt. The North Carolina Supreme Court has not clarified whether it intended for its rationale in *State v. Wilson*, 363 N.C. 478, to apply to all situations involving alleged N.C. Const. art. I, § 24 violations or whether it intended *Wilson* to apply only to N.C. Const. art. I, § 24 challenges involving a trial court speaking to fewer than all the members of the jury. However, the Court of Appeals has held on at least two occasions that the rationale in *Wilson* does extend to situations involving a coercive charge to a fully empaneled jury.

3. **Jury—deadlocked—instruction—harmless error**

   The State did not carry its burden of showing that an error in an instruction to a deadlocked jury was harmless beyond a reasonable doubt.. Moreover, the evidence against defendant was not overwhelming, unlike many cases in which error was found to be harmless.

**STATE v. MAY**

[230 N.C. App. 366 (2013)]

**4. Evidence—statutory rape—testimony of doctor and nurse**

Although the appeal was decided on other grounds, the trial court did not commit plain error in a prosecution for first-degree statutory rape by allowing the expert testimony of a doctor and nurse where defendant contended that their testimony included impermissible opinion evidence that the victim had been sexually abused. Neither witness stated that the victim was sexually abused or attempted to draw conclusions or make a diagnosis; instead, they testified to their experience and knowledge, examination procedures and treatment, and the victim's symptoms and characteristics.

**5. Evidence—prior crimes or bad acts—first-degree statutory rape—temporal proximity—sufficiently similar**

Although the appeal was decided on other grounds, there was no plain error in a prosecution for first-degree statutory rape in admitting evidence of other incidents where the alleged conduct and the charged conduct were not too remote in time and were sufficiently similar.

Appeal by Defendant from judgment entered 19 April 2012 by Judge Howard E. Manning in Alamance County Superior Court. Heard in the Court of Appeals 23 May 2013.

*Attorney General Roy A. Cooper, by Assistant Attorney General Teresa M. Postell, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for Defendant.*

DILLON, Judge.

Floyd Edward May, Sr., (Defendant) appeals from judgment convicting him of one count of first-degree statutory rape. We conclude that Defendant is entitled to a new trial because the State has failed to meet its burden to prove that the trial court's error in charging a deadlocked jury in violation of N.C. CONST. art. I, § 24 was harmless beyond a reasonable doubt.

I. Facts and Procedural History

Defendant is a divorced adult male in his mid-60's living on social security disability. Defendant has an adult son, Mike May. Mike May lives

with his wife Shannon May and their two daughters, Beth and Tammy,[1] in a mobile home park in Alamance County. This case involves two episodes of Defendant's alleged sexual abuse of Tammy, his younger granddaughter.

For the better part of fourteen years, Defendant lived with his son's family in their mobile home, sharing a bedroom with his older grand-daughter Beth. At some point, Defendant began sleeping in a playhouse/shed behind the mobile home.[2] By 2011, Defendant moved in with a woman in another mobile home in the same park.

The two alleged episodes between Defendant and Tammy forming the basis for the charges against Defendant occurred during the summer of 2011, when Tammy was ten years old. Regarding the first episode, Tammy testified that she went into her older sister's bedroom where Defendant was lying on a bed watching television. Tammy lay down beside Defendant while the door to the bedroom was closed. She testified that while they were watching television, Defendant "moved her shorts to the side and put his 'wee-wee' in [her] 'moo-moo'[3]," and that Defendant also "stuck his wee-wee" in her mouth.

The second episode occurred on 15 July 2011 in the swimming pool behind the mobile home. Tammy testified that on that day, while she and Defendant were in the pool, Defendant moved her bathing suit to the side and put his "wee-wee" in her "moo-moo." That same day, Tammy told her mother what Defendant had done to her. Also, Tammy's father confronted Defendant regarding Tammy's allegations, which Defendant denied.[4]

Later on 15 July 2013, Tammy's parents took her to Alamance Regional Hospital where she was seen by Dr. Jade Sung. Dr. Sung

---

1. Pursuant to N.C.R. App. 4(e), the minor children will be referenced with the use of pseudonyms, Beth and Tammy.

2. Ms. May testified that she forced Defendant to move out of Beth's bedroom and into the shed after she walked in on Defendant lying in the same bed with Beth, who was around thirteen years old at the time, with his legs "all the way around [Beth][,]" while they were watching television – an account which Defendant denied during his testimony. In any case, Ms. May testified that she thought the "issue" was resolved and had no problem with her daughters continuing to spend time with Defendant.

3. The evidence showed that Tammy was not allowed to use anatomical terms, but rather was taught to use the term "wee-wee" to describe the male sex organ and "moo-moo" for the female sex organ.

4. The State offered evidence of a third episode involving improper sexual conduct by Defendant with Tammy which allegedly occurred in the playhouse/shed some time prior to the 15 July 2011 episode.

testified that Tammy told her about Defendant "vaginally penetrat[ing] her in the swimming pool." Dr. Sung examined Tammy and noted that Tammy had no inner-thigh bruising, no contusions on her external genitalia, no tears, rips, cuts or bleeding and "no signs of physical assault." Dr. Sung testified that Tammy had some inflammation and irritation around her cervix, which could have been caused by a number of things such as chlorine. Dr. Sung testified, in sum, that her physical examination of Tammy was "unremarkable."

The following day on 16 July 2011, Tammy was examined by nurse Rebecca Wheeler and two physicians at UNC Hospital. Ms. Wheeler testified that Tammy told her that she had discomfort in her mid-abdominal area and that Defendant had "put his thing in her moo-moo."[5] She testified that their physical examination of Tammy revealed that she had a "normal" hymen and "no evident signs of physical assault."

On 8 September 2011, Tammy was seen by Dr. Dana Hagele at Crossroads, a child advocacy center in Alamance County. Dr. Hagele testified that Tammy told her about all three episodes. Dr. Hagele also conducted a physical exam of Tammy, an exam which she described as "completely unremarkable."

Deputy Bobby Baldwin testified that he interviewed Tammy in November 2011. He stated that the account Tammy gave during the interview was consistent with her trial testimony, except in one regard. Specifically, Deputy Baldwin testified that in the November 2011 interview, Tammy had stated that the first episode, which occurred in Beth's bedroom, *only* consisted of Defendant putting his "wee wee" in her mouth, whereas during the trial, she testified that Defendant had also put his "wee wee" in her "moo moo."

On 31 October 2011, Defendant was indicted on two counts of first-degree statutory rape, one count of first-degree sexual offense of a child, and one count of indecent liberties with a child. Defendant was tried on 16 April 2012 in Alamance County Superior Court. At the close of evidence, the trial court dismissed the charge of indecent liberties with a child but submitted the other three charges to the jury.

The trial court charged the jury three different times: The first charge was given just before the jury began deliberations; the second charge was given after the jury had deliberated for about two hours,

---

5. Tammy testified that she felt pain, which included a burning sensation when she attempted to use the bathroom after each of the three episodes.

and after it had sent a written note to the trial court indicating that they "were deadlocked"; and the third charge was given when, after thirty more minutes of deliberation, the jury sent another written note to the trial court indicating that "it is 10-2 and we are hopelessly deadlocked." In its third charge[6], the trial court addressed the jury as follows:

> [Foreperson], you don't need to sit down. I have you all's note. And I'm going, in my discretion, I'm going to ask you to resume your deliberations for another half an hour. I'm not going to stretch it any farther than that, but I'm going to ask you to give it your best shot. And it's your choice, not mine, but I'm not going to hot bond you, and we're not going to make you to stay until 5 o'clock, but I'm going to ask you to go back and try again, remembering the instructions I gave you. And at 3:30 I'm going to ask you to come out, unless you've hit, hit the button and reached the decision prior to that. And that's your choice.

> I mean, I can't tell you what to do. I appreciate your note letting me know, but I'm going to ask you, since the people have so much invested in this, and we don't want to have to redo it again, but anyway, if we have to we will. That's not my call either. That doesn't belong to me.

> I'll ask you just to give us another half hour an hour and continue to deliberate with a view towards reaching an agreement if it can be done without violence to your individual judgment. As I said earlier, none of you should change your opinion if you, you know, if you feel like that's what your conscience dictates, you stick by it.

> So with that, I'm going to ask you to go back and continue.

After this third charge, the jury deliberated for exactly thirty minutes, upon which it convicted Defendant of one count of first-degree statutory rape based on the episode in Beth's bedroom. The jury, however, failed to reach a unanimous verdict as to the other two charges; and, accordingly, the trial court declared a mistrial as to those charges. Based on

---

6. This third charge, was, in essence, an *Allen* charge, named for the United States Supreme Court case *Allen v. United States*, 164 U.S. 492, 41 L. Ed. 528 (1896), in which the Court held that it was permissible under the Federal Constitution for a trial court to give certain instructions to a deadlocked jury for the purpose of encouraging the dissenting jurors to reconsider their position. A brief history regarding *Allen* charges can be found in our opinion, *State v. Lamb*, 44 N.C. App. 251, 261 S.E.2d 130 (1979).

the single conviction, the trial court sentenced Defendant to 230 to 285 months imprisonment. From this judgment, Defendant appeals.[7]

## II. Analysis

On appeal, Defendant contends that he is entitled to a new trial because the trial court (A) coerced the jury's guilty verdict; (B) erroneously admitted inadmissible expert opinion evidence from State's witnesses Dr. Dana Hagele and Ms. Rebecca Wheeler; and (C) erroneously allowed the State to offer evidence of "other crimes" allegedly committed by Defendant for which he was not indicted. We address each argument in order below.

### A. Jury Instruction

Defendant contends that he is entitled to a new trial because the trial court's third charge to the jury was in violation of the standards established by our Legislature in N.C. Gen. Stat. § 15A-1235, *and* that these errors — when viewed in light of the totality of the circumstances — resulted in an unconstitutional coercion of "a hopelessly deadlocked" jury to return a guilty verdict, in violation of N.C. CONST. art. I, § 24. In our analysis, we must determine (a) whether the trial court committed error in its third charge; (b) if there was error, by what standard this Court is to conduct its review; and (c) whether, after applying this standard, the error warrants a new trial. We conclude Defendant is entitled to a new trial.

### 1. Did the Instruction Constitute Error?

**[1]** Defendant argues that the trial court erred in that its third charge violated the standards adopted by our Legislature in N.C. Gen. Stat. § 15A-1235 in a number of respects. N.C. Gen. Stat. § 15A-1235 was enacted in 1978 to serve as "the proper reference for standards applicable to charges which may be given a jury that is apparently unable to agree upon a verdict." *State v. Easterling*, 300 N.C. 594, 608, 268 S.E.2d

---

7. Defendant was found guilty of first degree rape and judgment was entered on 19 April 2012. On 30 April 2012, Defendant entered oral notice of appeal. The trial court entered appellate entries and appointed the Appellate Defender. N.C.R. App. P. 4(a)(1) and (a)(2) require that Defendant must appeal by "giving oral notice of appeal *at trial*," or by "filing notice of appeal with the clerk of superior court and serving copies thereof upon all adverse parties within fourteen days after entry of the judgment[.]" Defendant did not comply with N.C.R. App. P. 4(a). However, on 10 January 2013, Defendant filed a petition for writ of certiorari. The State does not oppose the granting of the writ, stating, in its response, that "the State respectfully submits that it is within this Court's discretion to allow" the writ. In any event, in our discretion, we grant Defendant's petition for writ of certiorari.

800, 809 (1980) (citation omitted). N.C. Gen. Stat. § 15A-1235(a) provides that a trial court *must* instruct a jury that a verdict must be unanimous. *Id.* N.C. Gen. Stat. § 15A-1235(b) provides a four-part instruction that a trial court *may* give regarding a juror's obligations in reaching his individual verdict. *Id.* N.C. Gen. Stat. § 15A-1235(c) provides for the instructions that may be given to a deadlocked jury as follows:

> If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions provided in subsections (a) and (b). The judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

*Id.*

We agree with Defendant that the trial court's third charge violated N.C. Gen. Stat. § 15A-1235. For instance, when the trial judge was informing the jury that he was requiring them to deliberate for an additional thirty minutes, he erred by stating, "I'm going to ask you, since the people have so much invested in this, and we don't want to have to redo it again, but anyway, if we have to we will." Our Courts have held that instructing a deadlocked jury regarding the time and expense associated with the trial and a possible retrial constitutes error. *See State v. Lipfird*, 302 N.C. 391, 276 S.E.2d 161 (1981); *State v. Easterling*, 300 N.C. 594, 268 S.E.2d 800 (1980); *see also State v. Pate*, 187 N.C. App. 442, 663 S.E.2d 212 (2007); *State v. Burroughs*, 147 N.C. App. 693, 556 S.E.2d 344 (2001); *State v. Johnson*, 80 N.C. App. 311, 341 S.E.2d 776 (1993); *State v. Lamb*, 44 N.C. App. 251, 260, 261 S.E.2d 130 (1979). In *Easterling*, our Supreme Court noted that prior to the passage of N.C. Gen. Stat. § 15A-1235 in 1978, "the general rule [was] that a trial judge may state to the jury the ills attendant upon disagreement including the resulting expense . . . and that the case will in all probability have to be tried by another jury in the event that the jury fails to agree." *Id.* at 607, 268 S.E.2d at 808 (quoting *State v. Alston*, 294 N.C. 577, 594, 243 S.E.2d 354, 365 (1977)). The Court then stated that it was the Legislature's intent, with the passage of N.C. Gen. Stat. § 15A-1235 in 1978, that "a North Carolina jury may no longer be advised of the potential expense and inconvenience of retrying the case should the jury fail to agree." *Id.* at 608, 268 S.E.2d at 809.

Further, as argued by Defendant, we believe the trial court erred in referencing only *a portion* of the four-part instruction contained in N.C. Gen. Stat. § 15A-1235(b) during its third charge. Though, pursuant to N.C. Gen. Stat. § 15A-1235(c), a trial court is *not required* to give

a re-instruction under subsection (b) to a deadlocked jury; however, "[w]hen[] a trial judge gives a deadlocked jury any of the instructions authorized by N.C.G.S. § 15A-1235(b), he *must* give them all." *State v. Aikens*, 342 N.C. 567, 579, 467 S.E.2d 99, 106 (1996) (emphasis added) (citation omitted).

### 2. What is the Appropriate Standard of Review?

**[2]** Having concluded that the trial court committed errors while giving its third charge to the jury, we must determine the proper standard by which this Court reviews those errors. Both parties agree that the *scope* of our review is based on a "totality of circumstances." *State v. Patterson*, 332 N.C. 409, 416, 420 S.E.2d 98, 101 (1992). In other words, we do not simply review the allegedly offending statements in the charge in isolation; but rather, we review those statements in the context of the entire charge. *Alston*, 294 N.C. at 593, 243 S.E.2d at 365 (stating that "the isolated mention of the expense and inconvenience of retrying a case does not warrant a new trial unless the charge as a whole coerces a verdict") (internal citation omitted). However, the parties disagree as to the proper *standard* of appellate review. The State argues that the proper standard of review is plain error because Defendant failed to lodge any objection, or move for mistrial, in response to the trial court's third charge to the jury. Defendant argues, however, that, notwithstanding his failure to object at trial, the proper standard of review is harmless error beyond a reasonable doubt because the errors violated his rights under the North Carolina Constitution.

N.C. CONST. art. I, § 24 provides that "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court." *Id.* Our Supreme Court has held that "[i]t is well settled that Article I, Section 24 of the Constitution of North Carolina prohibits a trial court from coercing a jury to return a verdict." *Patterson*, 332 N.C. at 415, 420 S.E.2d at 101.

As the State argues, our Supreme Court has held that where a defendant has failed to object to an offending charge during the trial, any argument raised on appeal based on a violation of N.C. CONST. art. I, § 24 of our State's constitution is waived, and any argument based on a violation of N.C. Gen. Stat. § 15A-1235 is reviewed for plain error. *See Aikens*, 342 N.C. at 578, 467 S.E.2d at 106 (1996) (stating that the "defendant[,] having failed to object to the instruction, our review is to determine whether the error, if any, constituted plain error"). In *State v. Bussey*, our Supreme Court stated as follows:

> Defendant's sole assignment of error concerns the trial judge's instructions and remarks to the jury following a report by it that it was deadlocked. Because defendant made no objection to the additional instructions or remarks by the trial judge, the plain error standard is applicable. It is defendant's contention that the judge coerced a guilty verdict, thereby violating defendant's right to a fair trial and an impartial jury under both the federal and state constitutions and N.C.G.S. §§ 15A-1232 and -1235. Because defendant failed to raise the alleged constitutional issues before the trial court, he has waived these arguments, and they may not be raised for the first time in this Court. We turn then to the question of whether the trial court's instructions and remarks constitute plain error under the applicable statute and decisions of this Court.

321 N.C. 92, 97, 361 S.E.2d 564, 567 (1987) (citations omitted).

In 2007, we reviewed an allegedly coercive charge based on a violation of N.C. Gen. Stat. § 15A-1235 *for plain error* in a case where a defendant failed to object when a trial judge charged a deadlocked jury concerning the time and expense of a retrial. *Pate*, 187 N.C. App. at 449, 653 S.E.2d at 217.

In 2009, however, our Supreme Court stated that "[w]hile a failure to raise a constitutional issue at trial generally waives that issue for appeal, where the error violates the right to a unanimous jury verdict under Article I, Section 24, it is preserved for appeal without any action by counsel." *State v. Wilson*, 363 N.C. 478, 484, 681 S.E.2d 325, 330 (2009). The N.C. CONST. art. I, § 24 violation in *Wilson*, though, did not involve a coercive jury charge, but rather a situation where the trial judge instructed a single juror outside the presence of the other jurors.

Defendant implicitly argues that the language employed by the Supreme Court in *Wilson* demonstrates that the Court intended that the scope of its ruling extend to all situations involving violations of N.C. CONST art. I, § 24. For instance, the Supreme Court stated that it was basing its holding on the fact that "the right to a unanimous jury verdict is fundamental to our system of justice." *Wilson*, 363 N.C. at 486, 681 S.E.2d at 331 (citations omitted). We note that it has long been the concern that a coerced jury verdict would result in "what really is a majority, rather than a unanimous, verdict." *State v. McKissick*, 268 N.C. 411, 415, 150 S.E.2d 767, 770-71 (1966). Further, the plain language used by the Supreme Court that "where the error violates the right to a unanimous

jury verdict under Article I, Section 24, it is preserved for appeal without any action by counsel" suggests that its rationale is to be applied to all Article I, Section 24 violations. *Wilson*, 363 N.C. at 484, 681 S.E.2d at 330.

On the other hand, there is language in *Wilson* which suggests that the Supreme Court intended the scope of its holding to be that N.C. CONST. art. I, § 24 violations are automatically preserved only in the context of a trial court instructing fewer than all jurors, and not in the context of a coerced jury instruction given to the entire jury. For instance, the following specific holding in *Wilson* is more limited that other language in the opinion:

> [W]e hold that where the trial court instructed a single juror in violation of defendant's right to a unanimous jury verdict under Article I, Section 24, the error is deemed preserved for appeal notwithstanding defendant's failure to object.

*Id.* at 486, 681 S.E.2d at 331. By arguing for a broad interpretation of *Wilson*, Defendant is effectively contending that the Supreme Court intended to overrule its prior holdings in *Aiken*, *Bussey* and *Patterson* — where our Supreme Court held that an argument based on N.C. CONST. art. I, § 24 in the context of a trial court's allegedly coercive charge to a fully empaneled jury was waived if not preserved by objection – without explicitly stating that this was its intent. However, the *Wilson* Court cites a ruling, handed down two years *prior* to *Patterson*, which held that where a defendant failed to object when the trial court addressed the jury foreman outside the presence of the rest of the jury, "the error violates defendant's right to a trial by a jury of twelve,.[and the] defendant's failure to object is not fatal to his right to raise the question on appeal." *State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985).

Neither party cites any Supreme Court opinion subsequent to *Wilson* in their arguments pertaining to the appropriate standard of review. Further, we have found no case in which the Supreme Court clarified whether it intended for its rationale in *Wilson* to apply to all situations involving alleged N.C. CONST. . art. I, § 24 violations – thus, effectively overruling *Patterson*, *Bussey* and *Aiken* – or whether it intended *Wilson* to apply only to N.C. CONST. . art. I, § 24 challenges involving a trial court speaking to fewer than all the members of the jury.

Our Court, however, has held on at least two occasions that the rationale in *Wilson* does extend to situations involving a coercive charge to a fully empaneled jury. Specifically, in *State v. Blackwell*, we held as follows:

Defendant first contends that the trial judge coerced the jury into reaching a verdict in violation of his right to a unanimous jury verdict under Article I, Section 24 of the North Carolina Constitution. As an initial matter, we note that although defendant failed to raise this issue at trial, this argument is nonetheless preserved for appellate review.

__ N.C. App. __, __, 747 S.E.2d 137, 140 (2013) (relying on *State v. Wilson*, *supra*). Likewise, in *State v. Gillikin*, our Court, also relying on *Wilson*, applied a harmless error analysis to a challenge by the defendant that a "the trial court's re-instructions to a deadlocked jury did not contain the substance of N.C. Gen. Stat. § 15A-1235(b) and unconstitutionally coerced guilty verdicts in violation of Article I, Section 24 of the North Carolina Constitution[,]" notwithstanding the fact that the defendant did not lodge an objection to the charge at trial. __ N.C. App. __, __, 719 S.E.2d 164, 167 (2011).[8] We are bound by these holdings, and, accordingly, will review the errors contained in the third charge for harmless error beyond a reasonable doubt. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36-37 (1989).

### 3. Was the Error Harmless Beyond a Reasonable Doubt?

**[3]** The State "bears the burden of showing that the error was harmless beyond a reasonable doubt." *Wilson*, 363 N.C. at 487, 681 S.E.2d at 331. In its brief, the State does not put forth any argument to meet its burden of demonstrating how the trial judge's errors were not harmless beyond a reasonable doubt. Rather, the State contends that it "is not burdened with showing error, if any, was harmless (sic), where the alleged constitutional error is first raised on appeal, because such an argument is not properly raised on appeal." Accordingly, because the State has failed to meet its burden, we hold that Defendant is entitled to a new trial.

In any event, after considering the totality of the circumstances, we do not believe the errors were harmless beyond a reasonable doubt. Unlike many cases in which the courts have found error to be harmless, *see, e.g., State v. Francis*, 343 N.C. 436, 471 S.E.2d 348 (1996) (holding an error was harmless in light of the "plenary" competent evidence of

---

8. *Blackwell*, from 2013, and *Gillikin*, from 2011, are both published opinions. We note that in an unpublished 2012 opinion, our Court refused to extend the holding in *Wilson* and *Ashe* to an N.C. CONST. art. I, § 24 challenge where a trial judge instructed a jury on alternate theories of a crime. *State v. Guy*, __ N.C. App. __, 729 S.E.2d 128 (2012) (COA12-197) (reviewing for plain error and explaining that "[t]he holdings of both *Ashe* and *Wilson* are narrow[;] [and] [w]e distinguish the facts of the present case and decline to extend the holdings of *Ashe* and *Wilson*").

the defendant's guilt of two murders, including testimony by defendant's accomplice that defendant shot both victims and defendant's own trial testimony admitting that he and the accomplice, with weapons, followed the victims into an alley where both victims were shot), the evidence in this case is not overwhelming. There was no physical evidence suggesting Defendant committed statutory rape on a young girl. Rather, the only direct evidence was the testimony of the alleged victim. Further, not only did the trial court fail to include all the elements of N.C. Gen. Stat. § 15A-1235(b) in its third charge, it included a statement regarding the expense and inconvenience associated with the trial and possible retrial, *see, e.g., State v. Lipfird*, 302 N.C. 391, 276 S.E.2d 161 (1981), and it imposed a 30-minute time limit, which the jury was able to meet just in time to reach one guilty verdict, *see, e.g., State v. Sutton*, 31 N.C. App. 697, 702, 230 S.E.2d 572, 575 (1976) (stating that "the mere fact that a judge prescribes a time limit for the jury's decision does not amount to coercion where the jury does not actually come to a decision within the general limits imposed by the judge").[9]

## B. Expert Witnesses

[4] Having ordered a new trial for Defendant, we need not address Defendant's remaining arguments. However, we address those arguments as they may arise in a re-trial.

Defendant contends that the trial court committed plain error by allowing the expert testimony of Dr. Dana Hagele and UNC Hospital nurse Ms. Rebecca Wheeler.[10] Specifically, Defendant argues that Dr. Hagele and Ms. Wheeler's testimony included impermissible opinion evidence that Tammy had, in fact, been sexually abused. We disagree.

This Court has well established that "[e]xpert opinion testimony is not admissible to establish the credibility of the victim as a witness." *State v. Dixon*, 150 N.C. App. 46, 52, 563 S.E.2d 594, 598, *aff'd*, 356 N.C. 428, 571 S.E.2d 584 (2002). Furthermore, in prosecutions of a sexual offense involving a child victim, our Supreme Court has found that "the trial court should not admit expert opinion that sexual abuse has in fact occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility." *State v. Stancil*, 355 N.C. 266, 559 S.E.2d 788, 789

---

9. Defendant advances a number of other arguments as to why the trial court's errors were not harmless beyond a reasonable doubt. However, we do not address the merit of these arguments since the State failed to meet its burden.

10. Defendant did not lodge an objection at trial to the experts' testimony as it pertained to the issue now presented on appeal.

(2002). Thus, "[t]estimony that a child has been 'sexually abused' based solely on interviews with the child are improper." *State v. Grover*, 142 N.C. App. 411, 419, 543 S.E.2d 179, 183, *aff'd*, 354 N.C. 354, 553 S.E.2d 679 (2001) (citation omitted).

"However, an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith." *Stancil*, 355 N.C. at 267, 559 S.E.2d at 789. "The nature of the experts' jobs and the experience which they possess make them better qualified than the jury to form an opinion as to the characteristics of abused children." *Grover*, 142 N.C. App. at 419, 543 S.E.2d at 184. "Thus, while it is impermissible for an expert, in the absence of physical evidence, to testify that a child has been sexually abused, it is permissible for an expert to testify that a child exhibits 'characteristics [consistent with] abused children.' " *Id.* (alterations in original).

### 1. Testimony of Dr. Dana Hagele

At trial, Dr. Hagele, a pediatrician that specializes in child abuse pediatrics, testified regarding her medical interview and physical examination of Tammy at Crossroads on 8 September 2011. Defendant contends that Dr. Hagele's testimony amounted to her expert opinion that sexual abuse had in fact occurred. Defendant relies on a number of decisions including *State v. Ryan*, __ N.C. App. __, 734 S.E.2d 598 (2012), *disc. review denied*, __ N.C. __, 736 S.E.2d 189 (2013), *State v. Towe*, __ N.C. __, 732 S.E.2d 564 (2012), *State v. Ewell*, 168 N.C. App. 98, 606 S.E.2d 914, *disc. review denied*, 359 N.C. 412, 612 S.E.2d 326 (2005), and *State v. Couser*, 163 N.C. App. 727, 594 S.E.2d 420 (2004), for this contention. However, we believe these cases are distinguishable because Dr. Hagele never stated that Tammy was, in fact, the victim of sexual abuse or attempted to make conclusions or a diagnosis as to such. Instead, Dr. Hagele testified to her experience and knowledge regarding sexually abused children and her medical interview and physical examination of Tammy, along with an explanation of the procedures she followed for Tammy's examination and treatment. Accordingly, we conclude that the trial court did not err, much less commit plain error, by admitting her testimony regarding her experience and professional expertise concerning sexually abused children and whether Tammy exhibited "symptoms or characteristics consistent therewith." *Stancil*, 355 N.C. at 267, 559 S.E.2d at 789.

### 2. Testimony of Ms. Rebecca Wheeler

At trial, Ms. Wheeler, a registered nurse with a specialty in pediatric sexual assault examination, testified that she physically examined

Tammy on 16 July 2011 for possible sexual assault injuries, but the examination showed no signs of assault.

Defendant contends that Ms. Wheeler's testimony, like that of Dr. Hagele, amounted to opinion evidence that sexual abuse had in fact occurred. Defendant specifically objects to Ms. Wheeler's use of the phrases, "it had happened[,]" and, "it occurred[,]" when responding to a question concerning the amount of time that had lapsed between the alleged assault and the medical examination.

However, like Dr. Hagele, at no time during her testimony did Ms. Wheeler state that Tammy was the victim of sexual abuse or attempt to make conclusions or a diagnosis as to such. Ms. Wheeler merely testified as to her examination procedures, her experience and knowledge of "the profiles of sexually abused children[,]" and whether Tammy "ha[d] symptoms or characteristics consistent therewith." *Stancil*, 355 N.C. at 267, 559 S.E.2d at 789. Therefore, we conclude that the trial court did not err, much less commit plain error, in admitting Ms. Wheeler's testimony as it did not include impermissible opinion testimony that Tammy had, in fact, been sexually abused.

## C. Admission of "Other Crimes" Evidence

[5] Finally, Defendant contends that the trial court committed plain error[11] by admitting the State's "other crimes" evidence regarding Defendant's uncharged alleged sexual conduct involving Tammy in the playhouse/shed and involving her sister, Beth, in Beth's bedroom. Specifically, Defendant claims this evidence was irrelevant and inadmissible under N.C. Gen. Stat. § 8C-1, Rules 401-404. We disagree.

N.C. Gen. Stat. § 8C-1, 404(b) (2011) states the following:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

*Id.* "[O]ur courts have been markedly liberal in admitting evidence of similar sex offenses by a defendant for the purposes now enumerated in Rule 404(b)[.]" *State v. Summers*, 177 N.C. App. 691, 696, 629 S.E.2d 902, 906, *disc. review denied*, 360 N.C. 653, 637 S.E.2d 192 (2006) (citation

---

11. Defendant did not lodge any objection to the "other crimes" testimony at trial.

and quotation marks omitted). Moreover, "evidence of prior incidents is admissible to show, *inter alia*, motive, opportunity, intent, knowledge, and common plan or scheme if the incidents are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of Evidence Code Rule 403." *State v. Stevenson*, 169 N.C. App. 797, 798, 611 S.E.2d 206, 208 (2005) (citation omitted). In *Summers*, we stated the following:

> [E]vidence of another crime is admissible to prove a common plan or scheme to commit the offense charged. But, the two acts must be sufficiently similar as to logically establish a common plan or scheme to commit the offense charged, not merely to show the defendant's character or propensity to commit a like crime.

*Id.* at 697, 629 S.E.2d at 907 (citation and quotation marks omitted). "Remoteness in time [between the other crimes and the current charges] generally goes to the weight of the evidence not its admissibility." *Id.* (alteration in original).

"Once the trial court determines evidence is properly admissible under Rule 404(b), it must still determine if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *State v. Bidgood*, 144 N.C. App. 267, 272, 550 S.E.2d 198, 202, *cert. denied*, 354 N.C. 222, 554 S.E.2d 647 (2001) (citation omitted). North Carolina Rule of Evidence 403 states, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" N.C. Gen. Stat. § 8C-1, Rule 403 (2011). "That determination is within the sound discretion of the trial court, whose ruling will be reversed on appeal only when it is shown that the ruling was so arbitrary that it could not have resulted from a reasoned decision." *Bidgood*, 144 N.C. App. at 272, 550 S.E.2d at 202 (citation omitted).

This Court has stated:

> Although not enumerated in Rule 404(b) itself, evidence may also be admitted to establish a chain of circumstances leading up to the crime charged:

> Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or [if it] forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

*State v. Smith,* 152 N.C. App. 29, 34-35, 566 S.E.2d 793, 798, *cert. denied,* 356 N.C. 311, 571 S.E.2d 208 (2002) (citation and quotation marks omitted).

We find no error in the testimony by Tammy's parents regarding Defendant's alleged conduct involving Beth in her bedroom. This testimony established the time period during which Defendant lived with the family, and the circumstances surrounding Defendant's move from Beth's bedroom to the playhouse/shed. This testimony "pertained to the chain of events explaining the context . . . and set-up of the crime[]" and it was "linked in time and circumstances with the charged crime[.]" *Id.* at 35, 566 S.E.2d at 798 (citation omitted).

Further, we find no error regarding the admission of the testimony about the alleged episode involving Defendant and Tammy in the play-house/shed. This incident happened during the same summer as the charged offenses. In both the alleged conduct in the playhouse/shed and the charged conduct, Defendant and Tammy lay down together in his bed to watch television when Defendant allegedly sexually abused her. In both the alleged and charged conduct, Tammy testified that Defendant moved her shorts to the side to penetrate her. In both the alleged and charged conduct, Tammy testified that the penetration hurt and that it made her urine burn.

Because the alleged conduct in the playhouse/shed and the charged conduct were not too remote in time and sufficiently similar, and because this Court takes an approach that is " 'markedly liberal in admitting evidence of similar sex offenses by a defendant for the purposes now enumerated in Rule 404(b)[,]' " we believe that the testimony of the three witnesses regarding the alleged conduct in the playhouse/shed was admissible under Rule 404(b). *Summers,* 177 N.C. App. at 696, 629 S.E.2d at 906 (citation omitted). Moreover, the determination of whether the evidence failed the test in Rule 403 "is within the sound discretion of the trial court[,]" and we do not find a sufficient showing "that the ruling was so arbitrary that it could not have resulted from a reasoned decision" in order to reverse the trial court. *Bidgood,* 144 N.C. App. at 272, 550 S.E.2d at 202 (citation omitted). As such, we do not believe the admission of the foregoing evidence constituted error, much less plain error.

### III.  Conclusion

The trial court's third charge to the jury did not follow the guidelines set forth in N.C. Gen. Stat. § 15A-1235. Defendant argues that these errors coerced the deadlocked jury into returning a guilty verdict against him,

in violation of his right to a unanimous jury verdict under N.C. Const. art. I, § 24. The State has failed to meet its burden of proving that these errors were harmless beyond a reasonable doubt. Accordingly, Defendant is entitled to a new trial.

NEW TRIAL

Judge ELMORE and Judge GEER concur.