IN THE SUPREME COURT OF NORTH CAROLINA

No. 510PA13

STATE OF NORTH CAROLINA

v.

FLOYD EDWARD MAY, SR.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 749 S.E.2d 483 (2013), finding error in a judgment entered on 19 April 2012 by Judge Howard E. Manning in Superior Court, Alamance County, and ordering that defendant receive a new trial. Heard in the Supreme Court on 17 November 2014.

*Roy Cooper, Attorney General, by Teresa M. Postell, Assistant Attorney General, for the State-appellant.*

*Staples S. Hughes, Appellate Defender, by Katherine Jane Allen, Assistant Appellate Defender, for defendant-appellee.*

EDMUNDS, Justice.

In this case, we consider the correct standard of review to apply when determining whether the trial court's instructions to the jury were improperly coercive, violating Article I, Section 24 of the North Carolina Constitution. We conclude that because defendant failed to object to the pertinent instructions, any error was not preserved and is subject to plain error review. Applying this standard,

we hold the trial court's instructions did not result in an unconstitutional coercion of a deadlocked jury. Accordingly, we reverse the decision of the Court of Appeals.

Until early 2011, defendant Floyd Edward May, Sr., an adult male in his mid-sixties, lived with his son, Mike; Mike's wife, Shannon; and their two daughters, T.M. and B.M. Thereafter, defendant began living with a woman in a nearby mobile home but continued to visit his son's family. T.M. was eleven years old and in fifth grade when she testified about her encounters with defendant, whom she called "Pa-Pa." In the summer of 2011, T.M. entered her sister's room, where defendant was lying on a bed, watching television. T.M. related that, while the door was closed, "Pa-Pa moved [her] shorts to the side and put his wee-wee in [her] moo-moo." When asked, she explained that the term "wee-wee" referred to a penis and "moo-moo" referred to a vagina. She added that defendant also put his "wee-wee" in her mouth during this encounter. Afterwards, T.M. went to the bathroom and felt a burning sensation when she urinated. She did not immediately tell anyone what had happened.

T.M. further testified that, during another occasion that summer, she was in a backyard playhouse with defendant, where they would sometimes watch television together. She saw defendant begin to "play" with his "wee-wee" by "moving it up and down." He then "just started sticking his wee-wee in my moo-moo." Although she felt pain and again experienced burning when she had to urinate, she told no one.

Finally, T.M. testified about defendant's actions in a swimming pool behind her home on 15 July 2011. While she was swimming with defendant, he moved her

"bathing suit to the side and put his wee-wee in [her] moo-moo." Her stomach began to hurt "real bad" and she left the pool to tell her mother Shannon about the pain. T.M. also described the incident and asked if she could get pregnant. Shannon telephoned her husband Mike to tell him what she had heard and then took T.M. to a hospital. When Mike confronted defendant about the incident in the pool, defendant responded, "I didn't do that."

Shannon first took T.M. to Alamance Regional Medical Center, where T.M. was examined by Jade Sung, M.D. Dr. Sung began by interviewing T.M., who told her that her Pa-Pa had vaginally penetrated her in the swimming pool. Dr. Sung then conducted an external examination of T.M.'s abdomen and genitalia. The examination revealed no bruising of T.M.'s inner thigh, no contusions on the external genitalia, and no lacerations, tears, rips, or cuts, although Dr. Sung noted some irritation and inflammation around T.M.'s cervix. Based on the examination, Dr. Sung was unable to confirm or deny T.M.'s allegations and characterized the results of the examination as "unremarkable."

T.M. was referred to The University of North Carolina Hospitals in Chapel Hill for further examination, where, on 16 July 2011, she was seen by Rebecca Wheeler, R.N., a specialist in pediatric sexual assault examinations. T.M. told Nurse Wheeler that her "Pa-Pa did something to me yesterday. . . . He put his thing in my moo-moo." T.M. also indicated that she had been experiencing discomfort in her mid-abdominal area since the day before. Nurse Wheeler indicated that her exam of T.M. showed a

normal hymen and no bleeding or lacerations, adding that ninety-five percent of children who have been sexually assaulted have no visible injury.

On 8 September 2011, T.M. was taken to Crossroads, a child advocacy center in Burlington, North Carolina, where she was seen by Dana Hagele, M.D., a board certified pediatrician. T.M. indicated to Dr. Hagele that she had visited two hospitals previously because "Pa-Pa did some nasty stuff to [her]." T.M. recounted the details of defendant's actions until she became visibly upset and no longer wanted to talk about it "so it gets out of [her] head." Dr. Hagele conducted a "head-to-toe physical" examination of T.M., including a genital inspection, the results of which were "completely unremarkable."

On 31 October 2011, defendant was indicted for one count of first-degree statutory rape and one count of indecent liberties with a child. The charge of rape arose from events alleged to have occurred in T.M.'s sister's bedroom, while the charge of indecent liberties arose from events alleged to have occurred in the backyard playhouse. The court dismissed the indecent liberties count at the close of all the evidence and we do not address it further. On 3 January 2012, defendant was indicted for an additional count of first-degree statutory rape and for first-degree sex offense with a child. The charge of first-degree sex offense arose from defendant's alleged act of fellatio in T.M.'s sister's bedroom, while the charge of statutory rape arose from events alleged to have occurred in the swimming pool.

Defendant's trial began on 16 April 2012. After all the evidence was presented and the parties completed their arguments, the trial court instructed the jury, which began its deliberations at 11:06 a.m. on 19 April. After taking a lunch break and resuming deliberations, at 2:24 p.m. the jurors sent a note to the court indicating "we are deadlocked." In response, the judge instructed the jurors to continue with their deliberations. He emphasized:

> In the course of your deliberations, each of you should not hesitate to re-examine your views and change your opinion if it is erroneous. But I repeat, none of you should surrender your honest conviction as to the weight or sufficiency of the evidence, solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

The court received another note from the jury at 3:00 p.m. stating that "it is 10-2 and we are hopelessly deadlocked." The trial court again instructed the jury, stating:

> I'm going to ask you to resume your deliberations for another half an hour. I'm not going to stretch it any farther past that, but I'm going to ask you to give it your best shot. And it's your choice, not mine, but I'm not going to hot bond you, and we're not going to make you to stay until 5 o'clock, but I'm going to ask you to go back and try again, remembering the instructions I gave you. And at 3:30 I'm going to ask you to come out, unless you've hit, hit the button and reached the decision prior to that. And that's your choice.
>
> I mean, I can't tell you what to do. I appreciate your note letting me know, but I'm going to ask you, since the people have so much invested in this, and we don't want to have to redo it again, but anyway, if we have to we will.

That's not my call either. That doesn't belong to me.

I'll ask you just to give us another half hour an hour [sic] and continue to deliberate with a view towards reaching an agreement if it can be done without violence to your individual judgment. As I said earlier, none of you should change your opinion if you, you know, if you feel like that's what your conscience dictates, you stick by it.

So with that, I'm going to ask you to go back and continue.

Thirty minutes later, the jury returned a verdict finding defendant guilty of one count of first-degree statutory rape, but failing to reach a unanimous verdict on the remaining two counts. After questioning the foreman and the other jurors, the trial court declared a mistrial as to the two counts on which the jury deadlocked. The trial court imposed an active sentence of 230 to 285 months of imprisonment for the statutory rape conviction.

Defendant appealed to the Court of Appeals, which reversed his conviction. *State v. May*, ___ N.C. App. ___, 749 S.E.2d 483 (2013). Although defendant raised several issues in his appeal, the Court of Appeals ordered a new trial based on its conclusion that the trial court's 3:00 p.m. instructions to the jury violated N.C.G.S. § 5A-1235(c), which sets out procedures a trial court may follow when a jury indicates that it is deadlocked. *Id.* at ___, 749 S.E.2d at 487. The Court of Appeals further concluded that the error resulted in an unconstitutional coercion of a deadlocked jury, *id.* at ___, 749 S.E.2d at 493, in violation of Article I, Section 24, which states that no criminal defendant shall be convicted but upon a unanimous verdict, N.C. Const. art.

I, § 24.

That court then considered the appropriate standard of review of the trial court's error. Although defendant did not object to the charge when it was given, the Court of Appeals cited our decision in *State v. Wilson*, 363 N.C. 478, 484, 681 S.E.2d 325, 330 (2009), for the proposition that this constitutional violation need not be preserved at trial. *May*, ___ N.C. App. at ___, 749 S.E.2d at 489. Accordingly, the Court of Appeals concluded that the State had the burden of proving that the error was harmless beyond a reasonable doubt. *Id.* at ___, 749 S.E.2d at 490. The Court of Appeals then found that the State had not met this burden because no physical evidence suggested defendant's guilt and because the trial court mentioned the time and expense associated with the trial and a possible retrial in the challenged instruction. *Id.* at ___, 749 S.E.2d at 490. Accordingly, the Court of Appeals ordered a new trial.

The State petitioned for discretionary review, raising only the issue whether the Court of Appeals had erred in holding that the State had the burden of proving that the purported error in the trial court's instructions was harmless beyond a reasonable doubt. Although the Court of Appeals considered other issues raised by defendant that might arise on retrial, it found no error in any of them and defendant did not petition for discretionary review. We allowed the State's petition.

This Court has condemned coercive instructions, noting that they may suggest to holdout jurors that they "should surrender their well-founded convictions . . . in

deference to the views of the majority," resulting in a majority verdict instead of one that is in fact unanimous. *See State v. McKissick*, 268 N.C. 411, 415, 150 S.E.2d 767, 770-71 (1966) (citation omitted). The State argues that the trial court's instructions were not coercive and did not violate defendant's right to a unanimous verdict. Before discussing the merits of defendant's successful contention below that the instructions were coercive, we consider the proper standard of review to apply when the alleged error was not preserved. We begin with defendant's contention that the instructions violated the Constitution of North Carolina. As noted above, defendant did not raise a contemporaneous objection when the instruction was given, but he argues that this issue is deemed preserved and no objection was necessary.

Defendant relies on *State v. Wilson*, in which the jury notified the court that a problem existed with the foreperson. 363 N.C. at 479-80, 681 S.E.2d at 327. Without objection by counsel for either party, the trial judge conducted several discussions with the foreperson while the other empaneled jurors were absent from the courtroom. *Id.* at 480-82, 681 S.E.2d at 327-28. The defendant argued that this procedure violated his right under the Constitution of North Carolina to a unanimous verdict. We agreed and held that "where the trial court instructed a single juror in violation of defendant's right to a unanimous jury verdict under Article I, Section 24, the error is deemed preserved for appeal notwithstanding defendant's failure to object." *Id.* at 486, 681 S.E.2d at 331.

However, *Wilson* is distinguishable from the case at bar. Unlike the defendant

in *Wilson*, who focused on instructions given to less than the full jury, defendant here argues that the instruction in question, given to the entire panel, was coercive. The Court of Appeals agreed, holding that the rule in *Wilson* applied to coercive instructions. *May*, ___ N.C. App. at ___, 749 S.E.2d at 489. However, this Court carefully constrained the breadth of the holding in *Wilson* so that not all violations of Article I, Section 24 are deemed preserved. This Court specified in *Wilson* that when a violation of Article I, Section 24 involves an instruction to less than all the jurors, that error is preserved as a matter of law. *Wilson*, 363 N.C. at 486, 681 S.E.2d at 331. The pertinent cases cited in *Wilson* to support the determination that the error relating to a unanimous jury verdict was deemed preserved also involve circumstances in which the entire jury panel did not receive the instructions at issue. *See State v. Nelson*, 341 N.C. 695, 698-700, 462 S.E.2d 225, 226-27 (1995); *State v. Ashe*, 314 N.C. 28, 33-36, 39, 331 S.E.2d 652, 655-57, 659 (1985). In contrast, the violation of Article I, Section 24 alleged here involves the content of instructions given to the entire jury panel. Because this alleged error does not fit within the constraints explicitly set out in *Wilson*, that case is inapposite. Thus, we apply the general rule that "failure to raise a constitutional issue at trial generally waives that issue for appeal." *Wilson*, 363 N.C. at 484, 681 S.E.2d at 330 (citing *Ashe*, 314 N.C. at 39, 331 S.E.2d at 659). Nevertheless, because the alleged constitutional error occurred during the trial court's instructions to the jury, we may review for plain error. *State v. Cummings*, 352 N.C. 600, 612-13, 536 S.E.2d 36, 47 (2000) (quoting *State v. Greene*,

351 N.C. 562, 566, 528 S.E.2d 575, 578, *cert. denied*, 531 U.S. 1041, 121 S. Ct. 635, 148 L. Ed. 2d 543 (2000) ("[W]e have previously decided that plain error analysis applies only to instructions to the jury and evidentiary matters.")), *cert. denied*, 532 U.S. 997, 121 S. Ct. 1660, 149 L. Ed. 2d 641 (2001).

A somewhat similar rule applies to contentions that an instruction to a jury violated a statute. In addition to his constitutional argument, defendant contended to the Court of Appeals that the trial judge's 3:00 p.m. instruction violated N.C.G.S. § 15A-1235 and that defendant's failure to object on statutory grounds was preserved as a matter of law. However, we see that in *State v. Aikens*, just as in the case at bar, the defendant alleged that a supplemental jury instruction failed to comply with N.C.G.S. § 15A-1235 and coerced a jury verdict in violation of Article I, Section 24. 342 N.C. 567, 467 S.E.2d 99 (1996). In considering this claim, we reviewed our holding in *State v. Ashe* and determined that when a trial court is alleged to have violated a mandatory statute, the issue is preserved as a matter of law, but when a trial court is alleged to have violated a permissive statute, we review for plain error if the issue has not been preserved. *Aikens*, 342 N.C. at 577-78, 467 S.E.2d at 106; *see also State v. Bussey*, 321 N.C. 92, 95, 361 S.E.2d 564, 566 (1987). Because subsections 15A-1235(b) and (c) are permissive, we conclude that the appropriate standard of review of defendant's statutory claim is also plain error review.

Under plain error review, a defendant must demonstrate that the trial court committed "a fundamental error." *See State v. Towe*, 366 N.C. 56, 62, 732 S.E.2d 564,

568 (2012). We find fundamental error only after reviewing the record in its totality and determining that the prejudice to the defendant "had a probable impact on the jury's finding of guilt." *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 379 (1983) (citation omitted); *see also State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). Plain error exists only in exceptional cases in which the error is "one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *State v. Grice*, 367 N.C. 753, 764, 767 S.E.2d 312, 321 (2015) (internal quotation marks omitted) (citation omitted) (quoting *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334). As part of our plain error analysis, in determining whether a trial court's instructions led to a coerced jury verdict in violation of Article I, Section 24 of our constitution, "we must analyze the trial court's actions in light of the totality of the circumstances facing the trial court at the time it acted." *State v. Patterson*, 332 N.C. 409, 416, 420 S.E.2d 98, 101 (1992) (citing *Bussey*, 321 N.C. at 96, 361 S.E.2d at 566-67).[1]

Section 15A-1235 sets out, *inter alia*, permissive guidelines for a judge when instructing a deadlocked jury:

> (a) Before the jury retires for deliberation, the judge must give an instruction which informs the jury that in order to return a verdict, all 12 jurors must agree to a verdict of guilty or not guilty.

---

[1] We note that the opinion in *Patterson* is ambiguous as to whether the defendant's objection under the Constitution of North Carolina was preserved. However, a defendant is permitted to argue the totality of the circumstances as part of his or her contention that plain error exists.

(b) Before the jury retires for deliberation, the judge may give an instruction which informs the jury that:

(1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(2) Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(3) In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(c) If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions provided in subsections (a) and (b). The judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

N.C.G.S. § 15A-1235 (a)-(c) (2013).

We have held that even when jury instructions " 'do not precisely follow the guidelines set forth in N.C.G.S. § 15A-1235,' " no error arises when " 'the essence of the instructions was merely to ask the jury to continue to deliberate' " without being coercive. *Aikens*, 342 N.C. at 579-80, 467 S.E.2d at 107 (citation omitted). In *Aikens*, even though the trial court failed to include some of the language in N.C.G.S. § 15A-1235(b)(2) and (b)(4), we found no error occurred and that plain error analysis was unnecessary because "the trial court's instructions were in no way coercive" and "[o]n the contrary, the trial court repeatedly emphasized to the jurors the importance of

their individual convictions." *Id.* at 580, 467 S.E.2d at 107. In *Bussey*, the trial court substantially gave the instructions set forth in N.C.G.S. § 15A-1235, followed later on two occasions by additional instructions that were colloquial versions of the same statutory language. 321 N.C. at 93-95, 361 S.E.2d at 565-66. This Court considered these instructions in their totality and found no error. *Id.* at 97, 361 S.E.2d at 567.

Here, the trial court's initial instructions to the jury similarly followed N.C.G.S. § 15A-1235(b) virtually verbatim, specifically including an instruction that "none of you should change or surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of reaching a verdict." After approximately two hours of deliberation, the jury sent a note indicating they were deadlocked. In response, the trial court informed the jurors that "I don't care how you come out or what you do in the end, that's your choice, but I'm going to ask you to continue on with your deliberations at this point." The court then reinstructed the jury, echoing the language of N.C.G.S. § 5A-1235(b), that:

> In the course of your deliberations, each of you should not hesitate to re-examine your views and change your opinion if it is erroneous. But I repeat, none of you should surrender your honest conviction as to the weight or sufficiency of the evidence, solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

After another thirty minutes of deliberation, the jury indicated that it remained deadlocked. The court again instructed the jury to "continue to deliberate

with a view towards reaching an agreement if it can be done without violence to your individual judgment. As I said earlier, none of you should change your opinion if you, you know, if you feel like that's what your conscience dictates, you stick by it." Following this last instruction, the trial court inquired whether both attorneys were satisfied with the instruction, to which defense counsel responded, "Yes, Your Honor. Thank you."

Thus we see that through the course of three separate instructions, "the trial court repeatedly emphasized to the jurors the importance of their individual convictions," *Aikens*, 342 N.C. at 580, 467 S.E.2d at 107, while giving instructions that substantially tracked the language of N.C.G.S. § 15A-1235(b). We find no error in these portions of the instructions.

Defendant argues that the trial court's instructions were erroneous and coercive in two other areas. First, defendant contends that the trial court's 3:00 p.m. instruction forced the jury to return a verdict within thirty minutes. However, the instructions may be read equally well as the judge telling the jurors that, whether or not they reached a verdict, he was not going to keep them late and that their work would be done in half an hour. Second, defendant argues that the trial court's statement pertaining to the expense of the trial and the possible necessity for a retrial was coercive. Assuming without deciding that the court's instruction to continue deliberations for thirty minutes and the court's isolated mention of a retrial were erroneous, these errors do not rise to the level of being so fundamentally erroneous

as to constitute plain error.

Defendant has failed to establish that the trial court plainly erred in its jury instructions. Accordingly, we reverse the holding of the Court of Appeals to the contrary.

REVERSED.

Justice ERVIN took no part in the consideration or decision of this case.