ZACHARY, Judge.
Defendant David Charles Lane appeals from judgments entered upon jury verdicts finding him guilty of assault on a female and sexual battery. On appeal, defendant argues that: (1) the trial court failed to adequately address an absolute impasse between defendant and defense counsel regarding trial strategy, (2) the trial court erred in failing to give an additional jury instruction on the sexual battery charge, and (3) the trial court's Allen charge[1] coerced the jury into reaching a unanimous verdict. For the reasons that follow, we conclude that the first issue constitutes a claim of ineffective assistance of counsel and we dismiss that claim without prejudice to defendant's right to file a motion for appropriate relief in the trial court. We find no error in the trial court's jury instructions on the sexual battery charge or in its Allen charge.
I. Background
The State's evidence established the following facts at trial. On 5 August 2015, defendant went to the Sears department store located at Hanes Mall in Winston-Salem, North Carolina. That same day, victim A.W. was working as the lead cashier at Sears. Defendant was seventy-two years old at the time, and he used a wheelchair to navigate the store.
At some point, a sales associate escorted defendant to the cash register in the home fashions department, where A.W. was working at the time, so that defendant could purchase a red cooking pot. While A.W. conducted the transaction, she asked defendant if he was a rewards program member and if he wished to apply for a credit card. Defendant repeatedly stated that he could not hear her, so A.W. leaned in closer and repeated her questions; however, defendant's hearing difficulties continued. At defendant's request, A.W. walked around the cashier's counter and bent down toward him.
As A.W. began explaining the reward and credit card programs, defendant "jumped" out of his wheelchair, "lunged" toward A.W., and grabbed her. A.W. fought to get away, but defendant "latched on" to A.W. and groped her breasts and all down the front side of her body. "The more [A.W.] fought, the harder [defendant] latched on[.]" Defendant eventually licked the side of A.W.'s neck and let her go. A.W. ran back behind the cashier's counter and called the store's loss prevention specialist for help, but no one answered the phone in that department. Strangely, defendant continued to engage in conversation with A.W., stating that she was pretty and that he enjoyed taking a "gander" around the mall by going into different stores. Because A.W. lacked the official authority to force individuals to leave the premises, she urged defendant to decide whether he "was going to buy [the red pot] or not[.]"
Defendant eventually completed his transaction, but he remained at A.W.'s cashier station for approximately thirty minutes. During that time, defendant began flirting with one of A.W.'s co-workers, a pregnant cashier who had returned to the home fashions department upon finishing her lunch break. After defendant left the home fashions department, A.W. found the loss prevention specialist, who located defendant in another department and asked him to leave the store. While the situation was being resolved, A.W. completed an incident report.
Despite his removal from the store in the afternoon on 5 January 2015, defendant returned to Sears later that evening, and he came back again on the morning of 6 January 2015. A.W. did not have any interaction with defendant on either occasion. When A.W. noticed that defendant had returned to the store on the morning of 7 August 2015, she notified the loss prevention department and stated that she would file a police report. Responding to a trespassing call at Hanes Mall, Winston-Salem Police Department Officer Mark Barker located defendant in Sears' electronics department. Officer Barker asked defendant if he had been involved in any inappropriate behavior at the store and defendant answered, "No, the manager already talked to me about that, and I told him it would never happen again." As Officer Barker's questioning continued, defendant gave somewhat cryptic and bizarre replies, including, "[W]ell if somebody told me to give them a good-bye kiss, I would have given them one." Officer Barker eventually arrested defendant.
On 10 September 2015, defendant stood trial in Forsyth County District Court on misdemeanor charges of sexual battery and assault on a female. After defendant was found guilty on both charges, he noticed an appeal to Forsyth County Superior Court.
Defendant was tried in superior court on 4 January 2016. On the following afternoon, the jury returned verdicts finding defendant guilty of assault on a female and sexual battery. The trial court then sentenced defendant to 75 days' imprisonment for each conviction and ordered defendant to register as a sex offender. Defendant appeals.
II. Analysis
A. Defendant's Right to Control Tactical Decisions
Defendant first argues that his constitutional right to control decisions related to his defense was violated when the trial court allowed defense counsel to proceed with trial despite defendant's statement that he was not ready to be tried. According to defendant, the trial court failed to adequately address an impasse between defendant and his counsel regarding trial strategy.
In State v. Ali , our Supreme Court recognized that tactical decisions at trial, "such as which witnesses to call, whether and how to conduct cross-examinations, what jurors to accept or strike, and what trial motions to make are ultimately the province of the lawyer[.]" 329 N.C. 394, 404, 407 S.E.2d 183, 189 (1991). The Ali Court qualified this general principle, however, and held that
when counsel and a fully informed criminal defendant client reach an absolute impasse as to such tactical decisions, the client's wishes must control; this rule is in accord with the principal-agent nature of the attorney-client relationship. In such situations, ... defense counsel should make a record of the circumstances, her advice to the defendant, the reasons for the advice, the defendant's decision and the conclusion reached.
Id.
Immediately before the jury was selected, defendant, defense counsel, and the trial court engaged in the following exchange:
[DEFENSE COUNSEL]: Your honor, my client and I are having a bit of a disagreement.
...
THE DEFENDANT: Could I speak?
THE COURT: No. You got a good lawyer right here. He's an experienced lawyer, but let him speak for you.
THE DEFENDANT: What I had thought I was coming to that we had talked about the last time he and I had gotten together was calendar call, nothing more than that. And then I was going to meet with him and put together a strategy because we had talked about two different strategies, and we had not come to a conclusion. We are not ready for trial. ... I am not ready for trial.
...
[DEFENSE COUNSEL]: Your Honor, I'm fully ready for trial. However, Mr. Lane is disputing my trial strategy, and I don't know what to do at this point. He's claiming that he's not ready for trial. In my view, we are, Your Honor.
THE DEFENDANT: We will be ready in a couple of weeks.
[DEFENSE COUNSEL]: No.
THE DEFENDANT: Ha?
THE COURT: I think it's more like a couple [of] seconds.
THE DEFENDANT: Excuse me?
THE COURT: We're ready now. We're going to pick a jury, and we're going forward with this case, so bring the jury in.
THE DEFENDANT: Let me voice my opposition.
THE COURT: Okay. You have been heard.
(Prospective jurors enter courtroom.)
On appeal, defendant argues that the trial court erred by failing to require defense counsel to make a record of the dispute with defendant and to move for a continuance, and by allowing defense counsel's preference to proceed with trial to prevail over defendant's wishes when an absolute impasse concerning trial strategy had been reached. As explained below, we conclude that defendant has asserted an ineffective assistance of counsel claim that must be dismissed and resolved in the first instance by the trial court should defendant choose to file a motion for appropriate relief.
Defendant's Ali argument is largely based upon this Court's decision in State v. Floyd , 238 N.C. App. 110, 766 S.E.2d 361 (2014). In Floyd , the defendant repeatedly disrupted trial proceedings immediately after the cross-examination of a detective who had testified for the State. Id. at 119-22, 766 S.E.2d at 369-71. Although the defendant insisted that he wanted his trial counsel to pose certain questions to the detective that were never asked, the trial court responded, "that's between you and [Defendant's trial counsel], ... that's not for me to interject[,]" and then had the defendant removed from the courtroom. Id. at 122, 766 S.E.2d at 370-71 (bracketed material in original). After noting that the trial court failed to inquire as to "the nature of the questions that [the d]efendant wanted to have posed to [the detective] on cross-examination" and "that the questions upon which [the defendant's] request was based were never posed despite his insistence that that be done," this Court concluded that the defendant "was denied his right to decide 'how to conduct cross examination[ ].' " Id. at 122, 766 S.E.2d at 371 (quoting Ali , 329 N.C. at 404, 407 S.E.2d at 189 ).
However, after allowing the State's petition for discretionary review in Floyd , the Supreme Court vacated the portion of this Court's opinion that granted the defendant a new trial pursuant to Ali . State v. Floyd , ---N.C. ----, --- S.E.2d. ----, 2016 WL 7422403 (Dec. 21, 2016). Although the Supreme Court recognized that defense counsel had not posed the questions to the detective that the defendant desired, the Court ultimately concluded that the record did "not shed any light on the nature or the substance of those desired questions." Id. at ----, --- S.E.2d. at ----, 2016 WL 7422403, at *7. Consequently, after characterizing the defendant's Ali argument as an ineffective assistance of counsel (IAC) claim,[2] the Court held:
In light of [the] defendant's disruptive behavior [throughout trial], we cannot ascertain, without engaging in conjecture, whether [the] defendant had a serious disagreement with his attorney regarding trial strategy or whether he simply sought to hinder the proceedings. As a result, it cannot be determined from the cold record whether an absolute impasse existed as described in Ali . Accordingly, we vacate this portion of the Court of Appeals' opinion and remand this case to that court for entry of an order dismissing [the] defendant's IAC claim without prejudice to his right to assert it in a motion for appropriate relief.
Id.
Here, as in Floyd , the record does not reveal whether defendant actually reached an absolute impasse with defense counsel concerning trial strategy. Indeed, once defense counsel expressed his readiness and willingness to proceed, the trial court refused defendant's request to further elaborate on the alleged trial strategy dispute. There is no record of what the alleged competing trial strategies were, or whether a serious dispute, as opposed to one manufactured by defendant, existed. Based on the Supreme Court's decision in Floyd , we conclude that defendant's argument pursuant to Ali constitutes a claim of ineffective assistance of counsel, and we dismiss this claim without prejudice to his right to assert it in a motion for appropriate relief in the trial court. See State v. Fair , 354 N.C. 131, 167, 557 S.E.2d 500, 525 (2001) ("[S]hould the reviewing court determine that IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent [motion for appropriate relief] proceeding").
B. Jury Instructions
Defendant's next argument is that the trial court erred when it instructed the jury on the charge of sexual battery. We disagree.
Because defendant failed to object to the jury instruction at trial, he did not preserve this issue for appellate review. N.C. R. App. P. 10(a)(2) (2015). However, defendant specifically and distinctly contends that the challenged jury instruction amounted to plain error, so we will review his arguments under that standard.
For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.
State v. Lawrence , 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations and internal quotation marks omitted).
Before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. In other words, the appellate court must determine that the error in question "tilted the scales" and caused the jury to reach its verdict convicting the defendant. Therefore, the test for "plain error" places a much heavier burden upon the defendant than that imposed by [N.C. Gen. Stat.] § 15A-1443 upon defendants who have preserved their rights by timely objection. This is so in part at least because the defendant could have prevented any error by making a timely objection.
State v. Walker , 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986) (citations omitted).
"In instructing the jury, the trial court must declare and explain the law arising on the evidence, state the evidence to the extent necessary to explain the application of the law and refrain from expressing an opinion as to whether or not a fact has been proved." State v. Greenidge , 102 N.C. App. 447, 451, 402 S.E.2d 639, 641 (1991) (citing N.C. Gen. Stat. § 15A-1232 ). "However, the trial court need not instruct the jury with any greater particularity than is necessary to enable the jury to apply the law to the substantive features of the case arising on the evidence when, as here, the defendant makes no request for additional instructions." State v.Atkinson , 39 N.C. App. 575, 581, 251 S.E.2d 677, 682 (1979) (citations omitted).
Our General Statutes define the misdemeanor of sexual battery, in pertinent part, as follows:
(a) A person is guilty of sexual battery if the person, for the purpose of sexual arousal, sexual gratification, or sexual abuse, engages in sexual contact with another person:
(1) By force and against the will of the other person[.]
N.C. Gen. Stat. § 14-27.33 (2015). As a result, "[t]he essential elements of sexual battery are: (1) sexual contact with another person; (2) by force and against the will of the other person; and (3) for the purpose of sexual arousal, gratification or abuse." State v. Kelso , 187 N.C. App. 718, 722, 654 S.E.2d 28, 31 (2007) (citing N.C. Gen. Stat. § 14-27A.5A (2005), which was later recodified as section 14-27.33 by S.L. 2015-181, § 15). The sexual contact in and of itself, however, is insufficient to satisfy the "by force" element of the crime. See State v. Raines , 72 N.C. App. 300, 303, 324 S.E.2d 279, 281 (1985) ("[W]e decline to accept the State's invitation to expand the 'physical force' doctrine and bring within its ambit the conduct-the physical touching-that constitutes the 'sexual act' itself in this case.").
In the instant case, the trial court gave the following jury instruction on the sexual assault charge:
The defendant has been charged with sexual battery. For you to find the defendant guilty of this offense, the State must prove three things beyond a reasonable doubt: First, that the defendant engaged in sexual contact with another person. Sexual contact means touching the breast of any person. Second, that the contact was by force and against the will of the other person. And third, that the defendant acted for the purpose of sexual arousal, sexual gratification or sexual abuse.
If you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant engaged in sexual contact with another person, that the defendant acted with the purpose of sexual arousal, sexual gratification or sexual abuse and that the contact was by force and against the will of the other person, it would be your duty to return a verdict of guilty to this charge.
If you do not so find or have a reasonable doubt as to one or more of the things, it would be your duty to return a verdict of not guilty to this charge.
This instruction was an almost verbatim recitation of the North Carolina Pattern Jury Instruction on sexual battery, see N.C.P.I.-Crim. 207.90 (January 2004), and defendant does not contend that the trial court misstated the law with respect to the elements of that crime. Rather, defendant argues that the trial court erred by failing to provide an additional instruction that the "sexual contact itself cannot constitute the force necessary to establish the 'by force' requirement of the second element." In making this argument, defendant relies on three different notes that the jury sent out during its deliberations.
The first note asked, "Was the defendant holding [A.W.] with both hands while fondling ... [A.W.]? Or 1 hand[?] How was he keeping her from getting away [?]" The trial court answered, "[y]'all have all the evidence in this case, and I have given you the law in this case." When a second note requested reinstruction on the definitions of sexual battery and assault on a female, the trial repeated its previous instructions. Finally, the third note notified the trial court that the jury had not yet reached a unanimous verdict on either of the charges against defendant: the jury was split "11-Guilty 1-Not Guilty" on the assault on a female charge and "5 [G]uilty 7-[N]ot [G]uilty" on the sexual battery charge.
As to the third note, defendant asserts that "[t]he fact that six jurors were prepared to return verdicts of guilty of assault on a female but not guilty of sexual battery strongly suggests that these jurors believed A.W.'s testimony that [defendant] touched her inappropriately and without her consent, but did not believe, or at least had a reasonable doubt, that this touching was forcible." Without deciding the validity of defendant's theory, we conclude that the trial court's charge contained no error. The trial court instructed the jury on all of the essential elements of sexual battery, and it is well established that "the preferred method of jury instruction is the use of the approved guidelines of the North Carolina Pattern Jury Instructions." State v. Ballard , 193 N.C. App. 551, 555, 668 S.E.2d 78, 81 (2008) (citation and quotation marks omitted). Defendant did not request the additional instruction that he now asserts was necessary; nor did defendant object to the instruction as given. Moreover, the jury's first note suggests that it understood the "by force element" of sexual battery required physical restraint beyond the sexual contact-in this case, the fondling of A.W.'s breasts-itself. Even if failure to give an additional instruction on sexual battery was erroneous, defendant has not established that the error was so "fundamental" that it " 'had a probable impact on the jury's finding that ... [he] was guilty.' " Lawrence , 365 N.C. at 518, 723 S.E.2d at 334 (citation omitted). Accordingly, defendant's argument is without merit.
C. Coerced Jury Verdict
Finally, defendant argues that the trial court coerced the jury into reaching a unanimous verdict. According to defendant, "the trial court implicitly threatened the jury with unreasonably long deliberations after the jury reported its inability to reach unanimous verdicts[,]" thereby violating N.C. Gen. Stat. § 15A-1235(c). We disagree.
" Article I, section 24 of the North Carolina Constitution prohibits a trial court from coercing a jury to return a verdict." State v. Dexter , 151 N.C. App. 430, 433, 566 S.E.2d 493, 496, aff'd , 356 N.C. 604, 572 S.E.2d 782 (2002). To that end, Section 15A-1235 contains, inter alia , permissive guidelines for a judge who is instructing a jury that has been unable to reach a unanimous verdict:
(a) Before the jury retires for deliberation, the judge must give an instruction which informs the jury that in order to return a verdict, all 12 jurors must agree to a verdict of guilty or not guilty.
(b) Before the jury retires for deliberation, the judge may give an instruction which informs the jury that:
(1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
(2) Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;
(3) In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and
(4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.
(c) If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions provided in subsections (a) and (b). The judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.
N.C. Gen. Stat. § 15A-1235(a) -(c) (2015). Often called an Allen instruction, subsection 15A-1235(b) complies with the dictates of the United States Supreme Court as expressed in Allen v. United States , 164 U.S. 492, 41 L.Ed. 528 (1896), and is North Carolina's "legislatively-approved version of the Allen charge." State v. Gettys , 219 N.C. App. 93, 102, 724 S.E.2d 579, 586 (2012). In Allen , the Supreme Court endorsed a jury instruction that prompted the jury to continue efforts at reaching a verdict. 164 U.S. at 501-02, 41 L.Ed. at 530-31.
Because defendant failed to object to the trial court's jury charge at trial, we review his statutory claim pursuant to subsection 15A-1235(c) for plain error. Statev. May , 368 N.C. 112, ----, 772 S.E.2d 458, 463 (2015) ( "Because subsections 15A-1235(b) and (c) are permissive, we conclude that the appropriate standard of review of defendant's statutory claim is ... plain error review.").
The issue of jury coercion involves a fact-intensive inquiry. "[I]n deciding whether a [trial] court's instructions force a verdict or merely serve as a catalyst for further deliberations, an appellate court must consider the circumstances under which the instructions were made and the probable impact of the instructions on the jury." State v. Peek , 313 N.C. 266, 271, 328 S.E.2d 249, 253 (1985). "Some of the factors considered are whether the trial court conveyed an impression to the jurors that it was irritated with them for not reaching a verdict and whether the trial court intimated to the jurors that it would hold them until they reached a verdict." State v. Porter , 340 N.C. 320, 335, 457 S.E.2d 716, 723 (1995) (citation omitted). "Clear violations" of section 15A-1235's procedural safeguards generally require a finding of prejudicial error. Peek , 313 N.C. at 271, 328 S.E.2d at 253. But "every variance from the[se] procedures ... does not require the granting of a new trial." Id. Furthermore, the trial judge is not required to recite instructions verbatim from the statute. Indeed, when a trial court failed to include some of subsection 15A-1235 (b)(2) and (b)(4)'s language in its Allen charge, our Supreme Court held that no error arises when " 'the essence of the instructions was merely to ask the jury to continue to deliberate' " without being coercive. State v. Aikens , 342 N.C. 567, 580, 467 S.E.2d 99, 107 (1996) (citation omitted).
The jury in the present case began its deliberations at 12:20 p.m. on 5 January 2016. Over the next two hours, the jury sent out the first two of the three aforementioned notes to the trial court. At 3:42 p.m., the trial court informed the parties that the jury had been unable to reach a unanimous verdict on either of the charges against defendant. The trial court then gave the jury an Allen charge after it entered the courtroom at 3:44 p.m.:
Your foreperson has informed me that you have been unable to reach an unanimous verdict on these charges. And you are reminded that it is your duty to do whatever you can to reach a verdict. You have a duty to consult with one another and deliberate with a view to reaching an agreement if it can be done without violence to your individual judgment.
Now, each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.
Now, I'm not suggesting that you haven't been doing this, but what I am doing is reminding you to continue doing it.
In the course of your deliberations, you should not hesitate to reexamine your own views and change your opinion if you're convinced it is erroneous. However, you should not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of reaching a verdict.
You will now resume your deliberations and continue your efforts to reach a verdict.
Now, as an anecdote, I had a jury here in Forsyth County afew years ago that deliberated for six days . I'm not going to let [you ] deliberate for six days. I'm not going to let you deliberate nearly that long, but I am going to ask you to go and continue to deliberate based on this instruction that I've given you for some more time to see if you can reach agreement.
Thank you for your efforts. We all thank you for your efforts, and we know you're working hard. If you want to take a break, you can. All you have to do is ask. Just tell me when you're going to, how long you want to take, and we'll just take the verdict sheet, we keep it closed in that envelope until you're all back in there.
(Emphasis added).
Defendant contends that by referencing an instance in which "a jury deliberat [ed] for six days" the trial court issued an "implied threat to require the jury to deliberate for an unreasonably long time, which resulted in a coerced jury verdict." However, we find nothing wrong with the trial court's "anecdote."
Read in context, the trial court's account was nothing more than an attempt to reassure the jury, as a whole, that deliberations can become lengthy as individual jurors, inter alia , "reexamine" their views, consider "changing" their opinions, and properly refuse to surrender "honest conviction[s] as to the weight or effect of the evidence." By comparing the jury's predicament with another jury in which deliberations lasted six days and stating that it would not keep the jury for "near that long," the trial court hinted at something that was apparent from the trial proceedings-this was a "he said, she said" case that might lead jurors to disagree, but it did not involve pouring over mountains of lengthy testimony or sorting out a large set of complicated criminal charges. In this way, the trial court's short account of another jury's deliberations provided a sense of comfort-perhaps a light at the end of the tunnel-for the jury. There was certainly no implicit threat in the anecdote, which simply allowed the jury "more time" to deliberate.
More importantly, nothing in the Allen charge, which substantially tracked the language of subsection 15A-1235(b), conveyed a sense of irritation with the jury or intimated that the jury would be held until it reached a verdict. The charge, in fact, did the opposite-it communicated a sense of patience and appreciation. The court reminded the jurors of their duty to deliberate and reach a decision without conceding their conscientious convictions. Similarly, the trial court cautioned each juror not to surrender an "honest conviction as to the weight or effect of the evidence solely because of the opinion of [his or her] fellow jurors or for the mere purpose of returning a verdict." As "the trial court repeatedly emphasized to the jurors the importance of their individual convictions, ... while giving instructions that substantially tracked the language of [subsection] 15A-1235(b)[,]" the court did not coerce the jury to reach a unanimous verdict. May , 368 N.C. at 121-22, 772 S.E.2d at 464 (holding that even if the "court's instruction to continue deliberations for thirty minutes and the court's isolated mention of a retrial were erroneous, these errors do not rise to the level of ... plain error") (citation and internal quotation marks omitted); See Porter , 340 N.C. at 335, 337, 457 S.E.2d at 724-25 (holding that "the trial court facilitated ... deliberation, but ... did not force a verdict" despite the court's statements to the jury that "we've got all the time in the world" and "we've got all week").
III. Conclusion
For the reasons discussed above, the trial court did not commit any error, much less plain error, in its jury instructions on the sexual battery charge and in its Allen charge. We dismiss defendant's claim of ineffective assistance of counsel without prejudice to his right to file a motion for appropriate relief in the trial court.
NO ERROR; DISMISSED WITHOUT PREJUDICE IN PART.
Report per Rule 30(e).
Judges ELMORE and DILLON concur.

The term "Allen charge" is coined from the United States Supreme Court's decision in Allen v. United States, 164 U.S. 492, 501-02, 41 L.Ed. 528, 530-31 (1896), in which the Court sanctioned the use of jury instructions that urge the jury to reach a verdict, if possible, after the jury has deliberated but reports to the trial court that it has been unable to reach a verdict.

Notably, the discussions in Ali and its progeny, including this Court's decision in Floyd, did not measure counsel's tactical trial performance; rather, they determined whether trial counsel had properly acted as the defendant's agent. See, e.g., Ali, 329 N.C. at 404, 407 S.E.2d at 190 ; Floyd, 238 N.C. App. at 122, 766 S.E.2d at 371 (2014) ; but see State v. Wright, 220 N.C. App. 418, 725 S.E.2d 475, 2012 WL 1515018, at *3 (2012) (analyzing the defendant's argument under Ali and noting that "[d]isagreement over trial tactics, without more, does not equate to ineffective assistance of counsel"). That is, the alleged errors in those cases were not understood to constitute traditional ineffective assistance of counsel claims, which require a defendant to show that (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness," and that (2) "the deficient performance prejudiced the defense," meaning "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. 668, 687-88, 80 L.Ed. 2d 674, [pin cite] (1984); see State v. Braswell, 312 N.C. 553, 562-63, 324 S.E.2d 241, 248 (1985) ("expressly adopt[ing] the test set out in Strickland v. Washington as a uniform standard to be applied to measure ineffective assistance of counsel under the North Carolina Constitution"). Ali and subsequent decisions in this State, therefore, focused on the constitutional principle that a defendant may not be compelled to follow the advice of counsel. See Faretta v. California, 422 U.S. 806, 820, 95 S. Ct. 2525, 2533, 45 L.Ed. 2d 562 (1975) (recognizing that the Sixth Amendment "speaks of the 'assistance' of counsel," that an assistant, however expert, is still an assistant, and that "[t]he language and spirit of the ... [a]mendment contemplate that counsel, like the other defense tools guaranteed by the [a]mendment, shall be an aid to a willing defendant"). Our Supreme Court's decision in Floyd, however, made it clear that alleged violations of Ali should now be analyzed under the two-part test for ineffective assistance of counsel claims set forth in Strickland.