An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-17

Filed 1 October 2025

Martin County, Nos. 16CRS050405-570, 16CRS050406-570

STATE OF NORTH CAROLINA

v.

SHAQUILLE RAYVON BARNES, Defendant.

Appeal by defendant from judgment entered 30 March 2021 by Judge Wayland Sermons Jr. in Martin County Superior Court. Heard in the Court of Appeals 10 September 2024.

> *Attorney General Jeff Jackson, by Assistant Attorney General Lisa Renee Atwater, for the State-appellee.*

> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Samuel J. Ervin, IV, for defendant-appellant.*

GORE, Judge.

Defendant, Shaquille Rayvon Barnes, appeals from judgment entered upon his convictions for one count of robbery with a dangerous weapon ("RWDW") and two counts of second-degree kidnapping. Defendant entered a plea of not guilty, was convicted by a jury verdict, and was sentenced to a term of 72 to 99 months'

imprisonment. This Court issued its writ of certiorari authorizing review of the trial court's judgment. We, therefore, have jurisdiction to hear and decide defendant's appeal pursuant to N.C.G.S. § 7A-32(b).

Defendant presents three issues on appeal: (1) whether the trial court erred by denying his motion to dismiss the second-degree kidnapping charges; (2) whether the trial court plainly erred by instructing the jury that it could convict defendant of second-degree kidnapping based upon confinement or restraint; and (3) whether the trial court impermissibly coerced a verdict by instructing the jury to continue deliberating.

Upon review, we vacate the trial court's judgment and remand this case to the Superior Court, Martin County, for resentencing based solely upon defendant's conviction for robbery with a dangerous weapon. *See State v. Moore*, 327 N.C. 378, 383 (1990); *see also State v. Harper*, 291 N.C. App. 246, 251–52 (2023); *State v. Hardy*, 242 N.C. App. 146, 160 (2015). We discern no error in part on the remaining issues.

**I.**

At trial, the State's evidence tended to show the following:

In 2013, store clerks Carlos Ospira and Erika Council were working at the Kitty Mart convenience store in Williamston, North Carolina. As Mr. Ospira and Ms. Council were preparing to close the store at about 8:45 p.m., Mr. Ospira saw "three individuals walk in the door" towards the register. Mr. Ospira observed three black males: one of them wore a mask, "like the movie *Scream*," and the other two wore

bandana face coverings. All three individuals wore blue surgical gloves on their hands. One of the men had a shotgun, and the other two had handguns.

Mr. Ospira was not "able to identify anyone from their facial features," but he concluded that the three men "appear[ed to be] familiar with the store." As the three men approached Mr. Ospira, who was "next to the register," they "demand[ed that he] open the cash register and give them some money." Mr. Ospira testified that each of the men pointed their weapons at him, causing Mr. Ospira to fear that he would be shot. Mr. Ospira "guessed," given his proximity to Ms. Council, that "the guns [were] pointed at" Ms. Council as well.

As soon as Mr. Ospira "gave the man with the shotgun" about $300 from the register, the intruders ran out of the store. Mr. Ospira and Ms. Council then "locked the door and called for 911." Investigating officers from the Williamston Police Department arrived approximately fifteen to twenty minutes later. After speaking with Mr. Ospira and Ms. Council, law enforcement conducted a "K-9 track" across an area outside the store. Detectives discovered fresh tire tracks and located a blue surgical glove lying next to the curb.

Detective Corporal Tristen Ward of the Williamston Police Department testified that the case went cold until 12 November 2015, when a database confirmed a match between defendant's DNA and the DNA found on the blue surgical glove recovered during the initial investigation. Defendant's address was directly behind the Kitty Mart convenience store. Later testing by the State Crime Lab confirmed

the DNA found on the blue glove matched the DNA profile of defendant.

Defendant's trial attorney made a motion to dismiss for insufficiency of the evidence at the close of the State's evidence. The trial court denied defendant's motion.

## II.

### A.

The first issue presented is whether the trial court erred by denying defendant's motion to dismiss the second-degree kidnapping charges. Defendant properly preserved his challenge to the sufficiency of the evidence to support his convictions for second-degree kidnapping for the purposes of appellate review. *See State v. Golder*, 374 N.C. 238, 246 (2020) (holding that, "under [N.C.R. App. P.] Rule 10(a)(3) and our case law, [the] defendant's simple act of moving to dismiss at the proper time preserved all issues related to the sufficiency of the evidence for appellate review.").

> We review the trial court's denial of a motion to dismiss de novo. In doing so, we must determine whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. When considering defendant's motion to dismiss, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor.

*State v. Summey*, 228 N.C. App. 730, 733 (2013) (cleaned up).

Under N.C.G.S. § 14-39(a)(2) (2023), any person who unlawfully confines, restrains, or removes a person over the age of sixteen "from one place to another," will be guilty of kidnapping if the confinement, restraint, or removal "is for the purpose of . . . [f]acilitating the commission of any felony[.]" Where the defendant releases the victim "in a safe place" and the victim has "not been seriously injured or sexually assaulted," the offense is second-degree kidnapping. N.C.G.S. § 14-39(b) (2023). Here, the indictment alleged defendant kidnapped Mr. Ospira and Ms. Council "for the purpose of facilitating the commission of a felony, [RWDW]."

It is self-evident, however, that "restraint or removal is inherently an element of some felonies, such as armed robbery[.]" *State v. Raynor*, 128 N.C. App. 244, 250 (1998) (citation omitted). We, therefore, "construe the word 'restrain,' as used in G.S. 14-39, to connote a restraint separate and apart from that which is inherent in the commission of the other felony." *State v. Fulcher*, 294 N.C. 503, 523 (1978). To construe "the statute otherwise would allow a defendant to be punished twice for essentially the same offense, violating the constitutional prohibition against double jeopardy." *State v. Irwin*, 304 N.C. 93, 102 (1981); *accord Fulcher*, 294 N.C. at 523. In accordance with our interpretation of the term "restraint," we also "construe the phrase 'removal from one place to another' to require a removal separate and apart from that which is an inherent, inevitable part of the commission of another felony." *Irwin*, 304 N.C. at 103. Thus, "[i]n cases involving armed robbery, the restraint,

confinement or removal required of the crime of kidnapping, has to be something more than that restraint inherently necessary for the commission of armed robbery." *State v. Stokley*, 276 N.C. App. 249, 255 (2021) (cleaned up).

In this case, there is no evidence in the record, either circumstantial or direct, tending to show a separate confinement, restraint, or removal within the meaning of N.C.G.S. § 14-39(a)(2). The record reveals, when viewed in a light most favorable to the State, that the intruders entered the store and pointed firearms at Mr. Ospira and Ms. Council. The victims remained still by the register during the time the robbery was in progress and while the suspects fled the Kitty Mart. While the armed robbery was in progress, and while the suspects fled the scene, the victims were "not exposed to greater danger than that inherent in the armed robbery itself, nor [were they] subjected to the kind of danger and abuse the kidnapping statute was designed to prevent." *Irwin*, 304 N.C. at 103. The trial court, therefore, erred by denying defendant's motion to dismiss the second-degree kidnapping charges for insufficiency of the evidence.

Having determined that the trial court erred, it is unnecessary to consider whether the trial court plainly erred in instructing the jury that it could convict defendant of second-degree kidnapping based upon restraint, given that the charging instrument did not allege defendant had restrained the victims. We also consider and reject defendant's jury coercion claim as follows.

**B.**

Defendant argues the trial court's supplemental jury instruction failed to comply with N.C.G.S. § 15A-1235 (length of deliberations; deadlocked jury), and thus, had a "clear coercive effect." We disagree.

After hearing the evidence, the arguments of counsel, and the trial court's instructions, the jury retired to deliberate upon a verdict. About 45 minutes later, the jury informed the trial court that it was "deadlocked with six guilty votes and six not guilty votes," and asked the trial court how it should proceed. The prosecutor asked that the jury "be allowed to continue deliberating" given that "they have only been out 45 minutes." Defense counsel responded, "I won't object to that since it's only been 45 minutes. I won't object to the break." The trial court informed the jury:

> THE COURT: Ladies and gentlemen, I'm in receipt of a note from your foreperson concerning your deliberations. The court is going to instruct you that I'm going to give you a 15-minute break, and then we'll come back and y'all will resume your deliberations. I understand what the note said. However, you have not deliberated even an hour yet. *So there is a lot longer in this process* that [indiscernible]. So now go and enjoy your 15 minutes. Be back in the jury room at 3:40, according to that clock. Be back in the jury room. As soon as all 12 of you are back, you may begin your deliberations.

Given that defendant did not object to the trial court's response to the jury's claim to be deadlocked, the applicable standard of review is plain error. *See State v. May*, 772 S.E.2d 458, 463 (N.C. 2015) (holding that "when a trial court is alleged to have violated a permissive statute, we review for plain error if the issue has not been preserved."); *see also State v. Collington*, 375 N.C. 401, 410 (2020) (citations omitted)

("[U]npreserved issues related to jury instructions are reviewed under a plain error standard . . . ."). "For error to constitute plain error, a defendant must demonstrate . . . that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty . . . ." *State v. Lawrence*, 365 N.C. 506, 518 (2012) (cleaned up).

Our Supreme Court has "interpreted N.C.G.S. § 15A-1235 as the proper reference for standards applicable to charges which may be given a jury that is apparently unable to reach a verdict." *State v. Peek*, 313 N.C. 266, 271 (1985) (cleaned up). "[E]ven when jury instructions do not precisely follow the guidelines set forth in N.C.G.S. § 15A-1235, no error arises when the essence of the instructions was merely to ask the jury to continue to deliberate without being coercive." *May*, 772 S.E.2d at 464. "To determine whether the trial court's instructions forced a verdict or merely served as a catalyst for further deliberation, our Court must consider the totality of the circumstances under which the instructions were made and the probable impact of the instructions on the jury." *State v. Boston*, 191 N.C. App. 637, 644 (2008) (cleaned up).

Here, we discern no coercive instruction or fundamental error of law. The trial court did not convey irritation, employ any tactic of intimidation—nor did it suggest "a retrial would burden the court system[.]" *State v. Beaver*, 322 N.C. 462, 464 (1988). Under the totality of the circumstances, the trial court encouraged further deliberations after the jury was out for a relatively short period of time. Even

presuming, and "without deciding that the [trial] court's instruction" and statement—that there is a lot longer in this process—"were erroneous, these errors do not rise to the level of being so fundamentally erroneous as to constitute plain error." *May*, 772 S.E.2d at 464.

### III.

Defendant has established that the trial court erred in denying his motion to dismiss the charges for second-degree kidnapping. It is unnecessary to separately address whether the trial court plainly erred in instructing the jury on those charges. Further, we reject defendant's jury coercion claim; we discern no clear violation of § 15A-1235 or plain error under the totality of the circumstances.

VACATED AND REMANDED IN PART; NO ERROR IN PART.

Judges STROUD and HAMPSON concur.

Report per Rule 30(e).