IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-556

Filed 3 September 2025

Robeson County, No. 21CRS052256-770

STATE OF NORTH CAROLINA

       v.

JAMES RONDELL POWELL, Defendant.

Appeal by defendant from judgment entered 5 September 2023 by Judge James Gregory Bell in Robeson County Criminal Superior Court. Heard in the Court of Appeals 26 February 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Reginaldo E. Williams, Jr., for the State.*

*Wyatt Early Harris Wheeler LLP, by Stanley F. Hammer, for the defendant-appellant.*

DILLON, Chief Judge.

Defendant James Rondell Powell was convicted of assault with a deadly weapon with intent to kill inflicting serious injury ("AWDWIKISI"). On appeal, he assigns five errors, including the trial court's failure to instruct the jury on lesser-included offenses. As explained below, we vacate the judgment and remand for a new trial on the following reasoning: "Specific intent to kill" is a necessary element of AWDWIKISI, but not for certain lesser-included offenses on which the jury was not instructed; the trial court denied Defendant's request that the jury be instructed on

said lesser-included offenses; *and* there is a reasonable possibility that the evidence of Defendant's intoxication during the assault, when viewed in the light most favorable to Defendant, was sufficient to create reasonable doubt in the mind of at least one juror that Defendant, indeed, had the "specific intent to kill" Victim.

## I. Background

The facts of this case are largely undisputed, as much of the encounter was captured on video surveillance with gaps filled in by eye-witness testimony.

Defendant, who was 58 years old at the time of the alleged assault, resided in an apartment where he lived with and cared for his elderly mother, who was suffering from Alzheimer's disease. For two months in early 2021, Defendant allowed John Horton ("Victim") to reside in their apartment, until a dispute occurred between them. For one week after Victim was forced to leave, Victim continually harassed Defendant by beating on the door, yelling at and threatening Defendant, and threatening to hurt Defendant's mother. Defendant responded by avoiding Victim.

On the evening of 27 March 2021, Defendant, who was intoxicated, exited his apartment to smoke a cigarette and saw Victim in the backyard where surveillance cameras were pointed. Defendant avoided Victim by walking to the parking lot and began smoking. Victim, however, approached Defendant, threatening Defendant and Defendant's mother. Eventually, Victim threw the first punch, striking Defendant in his face. Defendant then engaged Victim in a fight, and they tumbled to the ground.

Defendant gained control and began punching Victim in the face until Victim lay unresponsive on the concrete. Defendant then began stomping Victim in the face. A passerby observed the altercation and pulled Defendant away from Victim, but Defendant returned to attack the incapacitated Victim. Shortly after, a neighbor approached Defendant and Victim and witnessed the continued attack. The neighbor attempted to pull Defendant off Victim approximately three different times, at one point telling Defendant, "you['re] going to kill him," to which Defendant responded that he "wanted to."

Officers eventually arrived to find Victim lying face down in a puddle of blood and Defendant walking around "hollering and screaming" with the odor of alcohol on his breath. As a result of Victim's injuries, Victim stayed at a trauma center for four months, has lost his vision, and can no longer care for himself.

Defendant was charged with AWDWIKISI. The trial court denied Defendant's request to present lesser-included offenses to the jury. The jury convicted Defendant of the charge, and the trial court sentenced him accordingly. Defendant appeals.

## II. Analysis

Defendant brings several arguments on appeal, which we address in turn.

### A.    Motion to Dismiss

Defendant argues the trial court erred in denying his motion to dismiss based on the insufficiency of the evidence. We review whether there was sufficient evidence to send the matter to the jury *de novo*. *State v. Golder*, 374 N.C. 238, 249-50 (2020).

Defendant contends there was not sufficient evidence from which the jury could infer that his hands and feet were used in the fight as a "deadly weapon." *See State v. Meadows*, 272 N.C. 327, 331 (1968) (holding that the use of a "deadly weapon" during the assault is an essential element of AWDWIKISI).

Our Supreme Court has instructed that "bodily appendages such as a defendant's hands and arms can, depending upon the manner in which and the circumstances under which they are used, constitute deadly weapons[.]" *State v. Steen*, 376 N.C. 469, 485 (2020).

Here, the video evidence shows Victim essentially laying defenseless on concrete at some point during the fight. As Victim lay defenseless, Defendant repeatedly kicked and punched Victim in the head over the course of several minutes. Evidence shows Victim suffered severe injuries due to Defendant's assault.

We conclude this evidence, when viewed in the light most favorable to the State, was sufficient for the jury to infer that Defendant's hands and feet were deadly weapons in the context of his assault of Victim, as he lay defenseless. *See id.* at 485 (stating the question of whether hands and arms are deadly weapons is for the jury).

Defendant further contends there was not sufficient evidence to prove the intent element, i.e., he had the requisite intent to kill Victim during the assault. *See Meadows*, 272 N.C. at 331 ("intent to kill" is an element of AWDWIKISI).

The State must prove that Defendant had the *specific* intent to kill Victim during the assault; that is, it is not enough for the evidence to show that Defendant

4

merely intended to strike the blows which could cause death, as one of the elements of AWDWIKISI is that the assault "not result[ ] in death." *Id. See also State v. Daniel*, 333 N.C. 756, 762-63 (1993) (a defendant's evidence that he did not have the ability to form the specific intent to kill held relevant to defend against a charge of AWDWIKISI); *State v. Parks*, 290 N.C. 748, 754 (1976) (holding that "a specific intent to kill was a necessary element in the proof of [AWDWIKISI]").

Defendant, though, contends the State had the additional burden of showing, not only a specific intent to kill, but also that this intent was formed *only after premeditation and deliberation*. We disagree that the State had this additional burden in proving AWDWIKISI. A specific intent to kill may be formed in a defendant's mind without premeditation and deliberation, for instance, in response to some sudden provocation. *See State v. Rainey*, 154 N.C. App. 282, 287 (2002). And our Supreme Court has never held that the "intent to kill" must be formed after premeditation and deliberation to sustain a conviction of AWDWIKISI.

We note Defendant's argument concerning the evidence before the jury that he was intoxicated and our precedent from our Supreme Court recognizing voluntary intoxication as a defense to specific intent crimes. *See, e.g., State v. Baldwin*, 330 N.C. 446, 462 (1992) (holding that "voluntary intoxication may only be considered a defense to specific intent crimes").

However, we conclude that the evidence, when viewed in the light most favorable to the State, was sufficient for the jury to reasonably infer that Defendant

had the specific intent to kill Victim during the assault. Specifically, we note the violent nature and extent of Defendant's attack as Victim lay helpless and the statement made by Defendant to a neighbor passing by that he "wanted to" kill Victim. It was for the jury to determine whether Defendant's intoxication rose to the level as to impair Defendant's ability to commit a specific intent crime.

## B. Evidence of Prior Convictions

Defendant next argues the trial court erred by allowing the State to question him during cross-examination concerning two prior convictions — namely, a 1994 conviction for financial fraud and a 2010 conviction for assaulting a government official. The State offered these prior convictions to impeach Defendant's credibility pursuant to Rule 609 of our Rules of Evidence, which allows convictions over ten years old to be used only if "the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effects." N.C.G.S. § 8C-1, Rule 609(b) (2023).

Defendant's conviction for fraud is probative to demonstrate to the jury that Defendant's testimony may not be trustworthy. And his conviction for assault is probative to rebut Defendant's testimony that he had acted in self-defense and was not looking for a fight. We review the trial court's weighing of the probative value with the prejudicial effect for an abuse of discretion. *See State v. Harris*, 140 N.C. App. 208, 216-17 (2000).

Here, we cannot say the trial court abused its discretion in allowing evidence of Defendant's prior convictions under Rule 609 during the State's cross-examination of Defendant. Further, we conclude that, even if there was error in allowing evidence of Defendant's prior convictions, Defendant has failed to show prejudice. Specifically, based on the video evidence and the evidence of the extent of Victim's injuries, we conclude there is no reasonable possibility that the jury would have acquitted Defendant had they not heard the evidence of these prior convictions.

## C. Trial Court Errors After Jury Began Deliberating

Defendant argues the trial court made a series of errors after the jury began deliberating. Defendant contends that, in response to the jury's inquiry on the meaning of "specific intent," the trial court erroneously only defined "intent." He contends that, after the jury informed the trial court it was hopelessly deadlocked, the trial court inappropriately made statements tending to coerce the jury into reaching a verdict, thereby depriving Defendant of his constitutional right to a unanimous jury verdict. And Defendant contends the trial court erroneously failed to give an *Allen* charge in open court, opting instead to send written instructions into the jury room.[1]

---

[1] An *Allen* charge, named for *Allen v. United States*, 164 U.S. 492, 501 (1896), also known as a "dynamite charge," is an instruction that may be given to a deadlocked or "hung" jury which encourages the jury to continue deliberating and attempt to reach a verdict, *while also emphasizing that each individual member should not abandon their honest convictions. See also State v. Alston*,

The jury returned a verdict within two hours of the start of deliberations. Concerning this time period, the record shows as follows:

At 4:00 pm, on the fourth day of trial, the jury began deliberating.

At 4:30 pm, the jury asked the trial court to define "intent to kill" and "specific intent," whereupon the trial court gave a pattern jury instruction on intent generally.

At approximately 5:00 pm, the jury notified the trial court in writing that it was a "hung jury." The jurors then returned to the courtroom, whereupon the following exchange occurred:

> [THE COURT] Okay. So let me ask, without telling me how you're voting or anything, how far apart are you?
>
> [FOREPERSON] Ten/two.
>
> [THE COURT] Ten/two. All right. You don't think, if I gave you another hour to deliberate, you could come up with a verdict?
>
> [FOREPERSON] I don't think so.
>
> [THE COURT] What if I let you go home and sleep and relax and come back tomorrow, do you think that would help?
>
> [FOREPERSON] Just based off of what people have said, I don't think so, but - -
>
> [THE COURT] Okay. So what I need to do, I've got to give you an instruction, **because we've got four days invested in this case.** So I've got to give you an instruction in this case. So I've got to give you an

---

294 N.C. 577, 592–93 (1978) (recognizing that a trial court cannot give an instruction which has the effect of coercing a deadlocked jury to reach a verdict).

> instruction and tell you to give your best efforts to try to settle it. And **I'm going to give you, like, 30 minutes** - -
>
> [FOREPERSON] Okay.
>
> [THE COURT] - - And then have you come back in.
>
> [FOREPERSON] Okay.

(Emphasis added). Before the jury retired to continue deliberating, the trial court attempted to locate the *Allen* charge and conducted a bench conference with the attorneys. The jury then returned to the jury room to continue deliberating without the trial court giving an *Allen* charge in open court.

At about 5:15 pm, after the jury had exited the courtroom, the trial court conducted another bench conference with the trial attorneys, after which the court instructed the bailiff to take a printed copy of the pattern *Allen* charge instruction to the jury:

> [THE COURT]   All right. So I'm sending to the jury - - they are in the jury room - - 101.40, failure for the jury to reach a verdict, and give them 30 minutes. It's 5:15, and I'm going to bring them back in 30 minutes. **Thirty – tell them 30 minutes.** We'll break for 30 minutes.
>
> [THE BAILIFF]   Okay.

(Emphasis added.)

Approximately thirty minutes later, at 5:45 pm, the jury returned to the courtroom and announced that they had agreed on a verdict of guilty.

9

Regarding Defendant's argument concerning the trial court's instruction on "intent," we review any error by the court for plain error, as Defendant failed to object at trial. To prevail on plain error review, Defendant bears the burden to show "the jury *probably would have* returned a different result." *State v. Reber*, 386 N.C. 153, 160 (2024) (emphasis in original).

Here, assuming the trial court erred, we conclude, Defendant has failed to show the jury probably would have reached a different verdict had the trial court provided a more detailed instruction on "specific intent." As discussed above, there was clear evidence offered by the State from which the jury could infer that Defendant acted with specific intent.

Regarding Defendant's contention that the trial court erred by making statements which could be viewed as coercing the jury to reach a verdict, we hold Defendant has failed to show reversible error for the reasoning below.

A trial court's affirmative action in coercing a jury verdict implicates a defendant's constitutional right to a unanimous jury verdict. *See* N.C. Const. art. I § 24; *State v. Patterson*, 332 N.C. 409, 415 (1992) ("It is well settled that Article I, Section 24 of the Constitution of North Carolina prohibits the trial court from coercing a jury to return a verdict.").

In determining our appropriate standard of review on this issue, we note Defendant made no objection at trial to the trial court's conduct/statements of which Defendant now complains on appeal to have been coercive. For instance, Defendant

did not object when the trial court reminded the jury they had four days invested in the trial or when the trial court instructed the bailiff to inform the jury that they had thirty minutes.

Though our Supreme Court has held that *certain* Article I, Section 24 violations are automatically preserved for *prejudicial* error review on appeal, *see, e.g.*, *State v. Wilson*, 363 N.C. 478, 484 (2009), the Court later explained arguments under Article I, Section 24 based on an alleged coerced verdict is subject to only *plain* error review where the defendant fails to object to the coercive statements at trial. *State v. Wilson*, 363 N.C. 478, 484 (2009). Therefore, we review Defendant's contention regarding the trial court's allegedly coercive statements for plain error.

After reviewing the State's evidence and the statements made by the trial court, we cannot say the jury probably would have reached a different verdict had the trial court not made the statements. It is not clear from the context whether the jury viewed the trial court's statements as a directive to reach a quick verdict or simply as a statement they would recess and pick up the next day after giving them thirty more minutes to deliberate that day. Further, there was strong evidence supporting the jury's verdict, including footage of Defendant's assault, such that we cannot say the jury was probably coerced by the trial court's conduct.

Defendant further contends the trial court should have given an *Allen* charge in open court rather than giving the instructions to the bailiff to give to the jury.

By enacting N.C.G.S. § 15A-1235, our General Assembly has provided criteria for a trial court to follow when giving an *Allen* charge. But whether to give the charge is within the trial court's sound discretion. *State v. Aikens*, 342 N.C. 567, 578 (1996). Though when a trial court chooses to give the charge, it must give all of the charges as set forth in G.S. 15A-1235. *Id.* And the trial court must give the charge in open court.

Our Supreme Court has emphasized the purpose behind the enactment of N.C.G.S. § 12A-1535 was to avoid coerced verdicts from jurors struggling to reach a unanimous decision. *State v. Evans*, 346 N.C. 221, 227 (1997). *See also State v. Easterling*, 300 N.C. 594, 609 (1980).

Here, however, as we are holding the trial court did not commit *reversible* error in its conduct and statements to the jury of which Defendant complains on appeal, it would not be reversible error for the trial court to fail to mitigate its coercive conduct by not giving an *Allen* charge either in open court or otherwise. Therefore, in this case, we hold that any error committed by the trial court in giving the *Allen* charge in writing was not reversible error.

### D. Lesser Included Offenses

Defendant argues that the trial court erred by not instructing the jury on lesser-included offenses.

As Defendant requested the instructions be given, we review for prejudicial error. That is, we must determine whether the trial court erred and then whether

there was a reasonable possibility of a different outcome had the trial court given an instruction on at least one of the lesser-included offenses. *See State v. Helms*, 322 N.C. 315, 319 (1988).

As stated in the previous section, our Supreme Court recognizes AWDWIKISI, the crime for which Defendant was convicted, as a specific intent crime, where the specific intent applies only to the "intent to kill" element. As AWDWIKISI is a specific intent crime, voluntary intoxication is a valid defense. *See State v. Baldwin*, 330 N.C. 446, 462 (1992) (holding that "voluntary intoxication may only be considered a defense to specific intent crimes").

Many "assault" crimes, however, are "general intent" crimes. *See, e.g., State v. Johnson*, 379 N.C. 629, 630 (2021). For instance, assault with a deadly weapon inflicting serious injury (but with no intent to kill) ("AWDWISI") is not a specific intent crime. *State v. Arnett*, 276 N.C. App. 106, 110 (2021). Voluntary intoxication is not available as a defense to any such general intent crime. *Baldwin*, 330 N.C. at 462. Therefore, if there was evidence tending to show Defendant was voluntarily intoxicated to the extent he could not have formed a specific intent to kill, he would be entitled to an instruction on lesser included offenses.

In reviewing a trial court's refusal to grant a defendant's request to instruct on lesser-included offenses such as AWDWISI, "we must view the evidence in the light most favorable to [D]efendant." *State v. Barlowe*, 337 N.C. 371, 378 (1994).

13

Here, there was evidence that Defendant was intoxicated during his assault of Victim. We conclude there is a reasonable possibility the evidence of Defendant's intoxication, when viewed in the light most favorable to Defendant, created reasonable doubt that Defendant had the specific intent to kill Victim. Therefore, Defendant's burden was merely to show the evidence was sufficient *to establish reasonable doubt* that he was able to form specific intent, as the burden was on the State at trial to show specific intent existed.

This holding is based in part on testimony from the first officer on the scene, who stated Defendant "had been drinking heavily because there was a strong odor of alcohol about his breath . . . like I said, he was walking around talking, irate, hollering, screaming, pretty much." Also, portions of the video of the assault shows Defendant at times was walking around erratically. Further, Defendant testified that, though he remembered how the fight started with Victim threatening him and his mother and throwing the first punch, he had very little memory once he gained the upper hand on Victim during the fight when he was shown video of his assault. He further testified he *thought* he was striking Victim on the shoulder blade as Defendant lay on the ground, though physical evidence shows he did strike Victim repeatedly on the head as well.

Of course, when viewed *in the light most favorable to the State*, the evidence demonstrates Defendant knew exactly what he was doing, and alcohol did not impair Defendant's ability to form the specific intent to kill Victim. The evidence, when

viewed through this lens, supported the trial court's decision to deny Defendant's motion to dismiss the specific intent crime. However, it is our duty to view the evidence *in the light most favorable to Defendant* when considering whether Defendant was entitled to an instruction on a lesser-included offense and allow the jury to assign weight to the evidence.

Here, viewing the evidence in the light most favorable to Defendant, we conclude Defendant was entitled to an instruction allowing the jury to decide whether it unanimously believed, beyond a reasonable doubt, that Defendant specifically intended to kill Victim. That is, there was a reasonable possibility that at least one juror could have decided to convict Defendant of a lesser included offense instead of the one charge presented to them. In so concluding, we note that shortly after beginning its deliberations the jury asked the judge for further instruction on the meaning of "intent to kill" and later reported that two jurors *still* had reasonable doubt on convicting Defendant of the specific intent crime.

## III.   Conclusion

The jury's verdict convicting Defendant of AWDWIKISI, a specific intent crime, is supported by the evidence when viewed in the light most favorable to the State. However, when viewed in the light most favorable to Defendant, the evidence of Defendant's intoxication during the assault was sufficient to create reasonable doubt that Defendant acted with specific intent to kill Victim. Therefore, Defendant was entitled to his requested instruction on AWDWISI, a general intent crime and a

lesser-included offense of AWDWIKISI. Accordingly, we vacate Defendant's conviction and remand for a new trial.

VACATED AND REMANDED FOR A NEW TRIAL.

Judge COLLINS concurs.

Judge WOOD concurs with separate opinion.

WOOD, Judge, concurring but writing separately.

Although I agree with the result reached by the majority, I would hold the trial court committed prejudicial error in its response to the jury's report that it was deadlocked. The majority holds the failure to give the *Allen* charge in open court and any comments the trial court made during the consideration of the jury's deadlock did not rise to the level of plain error. I disagree with both their standard of review and their outcome.

The majority correctly acknowledges that there is both a constitutional right implicated by any coercive comments the trial court made as well as a statutory rule impacted by the trial court's failure to instruct the jury in open court.

A trial court's coercion of a jury verdict implicates a defendant's Article I Section 24 right under the Constitution of North Carolina to a unanimous jury verdict. *See* N.C. Const. art. I § 24; *State v. Patterson*, 332 N.C. 409, 415, 420 S.E.2d 98, 101 (1992). However, as the majority states,

> [t]hough our Supreme Court has held that *certain* Article I, section 24 violations are automatically preserved for *prejudicial* error review on appeal, *see*, *e.g.*, *State v. Wilson*, 363 N.C. 478, 484 (2009), the Court later explained that arguments under Article I, section 24 based on an alleged coerced verdict is subject to only *plain* error review where the defendant fails to object to the coercive statements at trial. *State v. May*, 363 N.C. 478, 484 (2009).

Because Defendant failed to object to the trial court's statements during the consideration of an *Allen* charge, the constitutional standard of review is plain error.

*WOOD, J., concurring but writing separately.*

"This exacting standard demands that even if error exists under step one, a defendant must still demonstrate that a jury probably would have reached a different result, which requires a showing that the outcome is significantly more likely than not. *State v. Gillard*, 386 N.C. 797, 820, 909 S.E.2d 226, 251 (2024) (cleaned up). Reviewing the trial court's comments to the jury during the *Allen* discussion in isolation, I agree with the majority's determination that the exacting standard of plain error cannot be met.

However, there is still a statutory rule with which we must contend. "[W]hen a trial court is alleged to have violated a mandatory statute, the issue is preserved as a matter of law, but when a trial court is alleged to have violated a permissive statute, we review for plain error if the issue has not been preserved." *State v. May*, 368 N.C. 112, 119, 772 S.E.2d 458, 463 (2015). In relying on *State v. Williams,* the majority focuses solely on N.C. Gen. Stat. § 15A-1235, a permissive statute which elucidates the process a trial court *may* take when a jury is deadlocked. As the majority correctly explains, "[i]t is generally not mandatory for a trial court to give a deadlocked jury an *Allen*-type charge; rather, whether to give the instruction is within the trial court's sound discretion. *State v. Aikens*, 342 N.C. 567, 578 (1995)." However, once the trial court within its discretion elects to give an *Allen* charge, the manner in which it handles the additional instructions is statutorily mandated by N.C. Gen. Stat. §15A-1234. N.C. Gen. Stat. §15A-1234 states:

> (a) After the jury retires for deliberation, the judge may

give appropriate additional instructions to:

(1) Respond to an inquiry of the jury made in open court; or
(2) Correct or withdraw an erroneous instruction; or
(3) Clarify an ambiguous instruction; or
(4) Instruct the jury on a point of law which should have been covered in the original instructions.

(b) At any time the judge gives additional instructions, he may also give or repeat other instructions to avoid giving undue prominence to the additional instructions.

(c) Before the judge gives additional instructions, he must inform the parties generally of the instructions he intends to give and afford them an opportunity to be heard. The parties upon request must be permitted additional argument to the jury if the additional instructions change, by restriction or enlargement, the permissible verdicts of the jury. Otherwise, the allowance of additional argument is within the discretion of the judge.

(d) All additional instructions must be given in open court and must be made a part of the record.

N.C. Gen. Stat. § 15A-1234 (2024).

In the case *sub judice* the jury notified the trial court they were deadlocked. The trial court summoned the jury to the courtroom to discuss their inquiry concerning the deadlock. The trial court informed the parties it was going to give the pattern instruction 101.40, the *Allen* charge, and gave the parties an opportunity to be heard. Finally, the additional instructions were included as part of the record. However, the trial court did not comply with the first section of N.C. Gen. Stat. § 15A-1234(d), "all additional instructions *must be given in open court*." N.C. Gen. Stat. §

15A-1234(d) (2024) (emphasis added). Instead, the trial court printed the instructions and requested the bailiff take the paper to the jury room. Because the trial court clearly violated a mandatory statute, the issue is preserved as a matter of law, and we now consider whether the error was prejudicial. *See State v. May*, 368 N.C. 112, 119, 772 S.E.2d 458, 463 (2015).

Prejudicial error is "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443 (2024).

In evaluating a trial court's failure to follow a similar statute regarding instructions for the jury, N.C. Gen. Stat. §15A-1233, our Supreme Court has stated,

> Our jury system is designed to ensure that a jury's decision is the result of evidence and argument offered by the contesting parties under the control and guidance of an impartial judge and in accord with the judge's instructions on the law. All these elements of the trial should be viewed and heard simultaneously by all twelve jurors. To allow a jury foreman, another individual juror, or anyone else to communicate privately with the trial court regarding matters material to the case and then to relay the court's response to the full jury is inconsistent with this policy.

*State v. Robinson*, 160 N.C. App. 564, 567, 586 S.E.2d 534, 536 (2003) (quoting *State v. Ashe*, 314 N.C. 28, 36, 331 S.E.2d 652, 657 (1985)). The Court went on to recognize

> we cannot know whether the jury foreman truly understood the answers provided to him by the trial court or whether he conveyed them correctly to the other jurors. Further, it is impossible to know whether the other jurors themselves understood the instructions provided to them

by the foreman when deliberating and deciding their verdict. If all twelve jurors had been summoned to the courtroom as required by the statute and case law, there would be no question whether all twelve were conveyed the same answers in the same manner. We hold that it was reversible error by the trial court to not summon the full jury into the courtroom before answering their questions.

*Id* at 569, 586 S.E.2d at 537. While the issue of conversing outside the presence of the full jury is not exactly the same as providing instructions outside the presence of the trial court, the same fundamental concerns impacting a unanimous verdict are raised. Our courts consistently require jury instructions to be provided in open court to ensure unanimity and clarity, and when the trial court chooses to give one of the *Allen* instructions, it is then required to give all four *Allen* charges based on similar concerns. N.C. Gen. Stat. §15A-1234 (2024). *See also State v. Aikens*, 342 N.C. 567, 579, 467 S.E.2d 99, 106 (1996).

Additionally, the instruction at issue is a controversial one. An *Allen* charge is commonly known as a "shotgun charge" as the State referred to it during trial or a "dynamite charge" because of the serious thrust of the directive to holdout jurors which can be seen as pressure for them to cave to the majority, creating a majority vote rather than a unanimous vote as require by law. *State v. Lamb*, 44 N.C. App. 251, 253-54, 261 S.E.2d 130, 131 (1979). Providing such an instruction via the bailiff with no assurance that it was accurately delivered and accurately understood by all twelve jurors is prejudicial error.

The trial court further compounded the prejudicial effect of this error with its

statements to the jury that the majority recognizes "could be viewed as coercing a verdict." As noted *supra,* the statements alone do not reach the level of plain error; however, they do carry weight in the evaluation of whether the trial court's error in failing to give the *Allen* charge in open court was prejudicial. Our Supreme Court has "condemned coercive instructions, noting that they may suggest to holdout jurors that they should surrender their well-founded convictions . . . in deference to the views of the majority, resulting in a majority verdict instead of one that is in fact unanimous." *State v. May*, 368 N.C. 112, 117, 772 S.E.2d 458, 462 (2015) (cleaned up). Our courts have consistently held a trial court commits error when it makes comments about the time and expense of a trial or the fact that another jury would have to be called to retry the case. *State v. Lamb,* 44 N.C. App. 251, 260, 261 S.E.2d 130, 135 (1979); *State v. Lipfird*, 302 N.C. 391, 392, 276 S.E.2d 161, 162 (1981); *State v. Pate*, 187 N.C. App. 442, 448, 653 S.E.2d 212, 216 (2007). In this case, the trial court stated, "I've got to give you an instruction, because we've got four days invested in this case. So I've got to give you an instruction and tell you to give your best efforts to try and settle it. And I'm going to give you, like 30 minutes." Thirty-two minutes later the trial court reconvened, and the jury presented it with a verdict.

Because it is unclear whether the jurors actually received and understood the instructions in the *Allen* charge, in particular the instruction supporting holdout jurors, "[n]o juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose

*WOOD, J., concurring but writing separately.*

of returning a verdict," and in light of the trial court's coercive statements which put further pressure on jurors, I believe the error here was prejudicial.

The trial court clearly violated a statutory mandate by failing to give the *Allen* charge to the jury in open court and compounded the prejudice of that error by providing a potentially coercive instruction without ensuring that all jurors understood their mandate. Therefore, I believe that in addition to the instructional error noted by the majority, the trial court also made a prejudicial error which requires reversal on the issue of the *Allen* charge.